## SHEPPARD v. THOMAS.

ESTATES UPON CONDITION.—*Precedent and subsequent*—Where an estate is conveyed upon a condition *precedent*, the condition must be performed before the estate will pass, but when the condition is *subsequent*, the estate passes at the execution and delivery of the deed.

Whether a condition is *precedent* or *subsequent*, depends upon the intent of the parties creating the same, and not upon the technical words used.

The retention of *title* and the reservation of a "lien" upon the same property is inconsistent with, and at variance with the ordinary transactions of mankind.

Where the words, employed in the reservation of an equitable right, amount to no more than a mere assertion of what the law is, such words are mere surplusage.

Where the lien reserved is *personal*, the assignment of the notes, given for the purchase money, does not carry with it the lien without words to that effect in the deed.

The vendee should show a waiver of the lien of the vendor, otherwise its retention will be presumed.

*Appeal from Jefferson Circuit Court.*

HON. W. M. HARRISON, Circuit Judge.

*Watkins & Rose*, for appellant.

The notes, which are the foundation of the claim in this case, were not negotiable by the law merchant, because, *first*, they were under seal; *Walker v. Johnson, 13 Ark., 527. Second,* they were not for the payment of a certain sum of *money, absolutely and unconditionally; Story on Notes, sec. 1.* A promise, which may be discharged in anything else but *current money,* is not negotiable, because a negotiable instrument by the commercial law is not a mere promise to pay, but is considered as the absolute representative of money, which will be delivered at the time the note falls due; *Ib. secs. 18, 19.* Had they been negotiable instruments, however, the rights of the parties would not be changed in this case; because, the notes being assigned after they had fallen due, the assignee took them

when they were under suspicion, and only holds them subject to all the equities existing between the antecedent parties; *Ib. sec. 190; Bertrand v. Barkman, 13 Ark., 150.* The note in *Bertrand v. Barkman*, was payable in Louisiana, and the case was decided strictly in accordance with the principles of commercial law. No reference was made to our statute of assignments. In this case the notes, being under seal, could not be transferred at all except by that statute. Past due, under seal, the commercial law and the statutory rule in this case harmonize. If there is any principle of law cemented by continual inculcation it is, "that the assignee of a note or bond, under our statute, takes it at his peril, and with the risk of any latent equity that the maker could set up in any suit as against the payee or obligee." *Walker v. Johnson, 13 Ark., 522; Worthington v. Curd, 22 ib., 278.*

Upon the merits of this case we beg leave to submit the following considerations:

I. The decree is too broad.

It was the express agreement between the parties; the sale was made and the purchase accepted on the stipulation expressed, that the vendor would look *only* to the property sold for payment.

This is not only the clear intent, and is so stated in the deed, but it further expressly *exempts* all other property of Sheppard from liability in respect of this contract.

It is a settled rule that the decree must conform to the allegations in the pleadings as well as the proofs in the cause; *7 Wheat., 522; 12 Leigh, 69.*

A decree cannot be made to extend beyond the scope of the bill; *3 Ala. 718; 3 J. J. Marsh., 544.*

In the case at bar, the complainant does not ask for execution beyond the property sold. Nevertheless the decree in the cause gives it.

A complainant cannot obtain a decree for more than he has asked for in his bill; *9 Cranch 19.*

The relief must be within the general scope of the bill; *6 Wend. 63.*

And consistent with the prayer thereof; *1 Edw. Ch., 654.*

Under a prayer for general relief, no relief can be granted inconsistent with the special relief prayed; *4 Desau , 330*; *1 John. C. R., 111.*

II. There having been already paid by Mr. Sheppard, on account of said purchase, an amount greatly exceeding the value of the negroes and their increase; and these and the title to them having been lost, it is inequitable and unjust, after such loss, and under the circumstances of this case, and of the warranty of the same, not to allow an abatement therefor in favor of Sheppard, in a proceeding which is in effect for specific performance of the *whole* contract on the part of the vendee, while the vendor is acknowledged to be able to perform only a part of his agreement !

One of the conditions of the sale, namely, the warranty of the negroes to be slaves for life, having failed, without fault of Sheppard, to this extent there is a failure of consideration, the amount of which, in this proceeding by the vendors or their assignee seeking, in effect, a specific performance, Sheppard is entitled to recoup.

*In Hemphill v. Miller, 16 Ark., 272*, specific performance was refused because, among other reasons, it had been rendered impossible by the act of the government.

It is a universal rule in equity that he who asks a specific performance must be in condition to perform himself. *Morgan v. Morgan, 2 Wheat., 290; 27 Ala., 184.*

Specific performance will not be decreed though the contract be valid at law, if it appear harsh or unjust. *1 Ired. Ch., 299.*

A court of chancery will not decree a specific performance where it would operate unjustly on the defendant. *1 Ala., N. S., 458.*

Whether a specific performance will be decreed must depend upon the equity and justice of all the circumstances of the case; and there may be cases where the contract is perfectly

valid and the consideration sufficient, and yet not such as will justify a decree for specific performance. *2 Wats, 148.*

Decree for specific performance will not be made where from a change of circumstances the performance would be attended with peculiar hardship to the defendant. *3 Har. & McHen., 324.*

Nor unless performance can be fairly and conscienciously required at the time. *1 Har. & J., 301.*

A decree for specific performance is not a matter of strict right on proof of the agreement. A defendant may show that to require such performance would be inequitable—or that the bargain was hard, unequal or oppressive, and would operate in a different manner from what was contemplated by the parties when they executed it. *6 Met., 346.*

Chancery will often refuse to enforce a contract which it would also refuse to annul, and leave the parties to their remedy at law. *11 Pet., 229.*

In this aspect of this case and considering that the proceeding is not on any *implied lien*, but on the lien expressly reserved in the contract, it would seem, that chancery might well decline any action in the premises, and leave the parties to a court of law.

See *6 Johns. Chy., 222*, and cases cited in the opinion of the chancellor, particularly *2 Bro. P. C., 415*, where a bill was dismissed on the ground of the great inequality of the agreement to pay £9,200 for that which was not worth £1,000 at the time of performance. And the case of *Faine v. Brown*, cited in *Ramsdem v. Hylton, 2 Ves. Sr., 304*, where the *hardship alone of losing half the purchase money*, if carried into execution, was sufficient to determine the discretion of the court not to interfere, but to leave them to law.

An application for the enforcement of a vendor's equitable lien is like the application for the performance of a contract, which equity never grants whenever it would be violative of the principles of morality or justice, although according to the technical rules of law the contract would be valid. *5 Md. 152.*

In cases of inequality of obligation the parties will be left to their remedy at law. *1 Md. Chy. Decis, 13.*

If one of the parties is not bound, or is not able to perform, he cannot call on a court of equity to compel performance by the opposite party. *Id., 345.*

The court will never compel specific performance when looking at the circumstances of the case on both sides it is apparent that injustice would thereby be done. *18 Barb., 350; 9 Ohio, (N. S.) 511.*

A court of equity will not permit a vendor to assert rights of which he cannot conscientiously avail himself. *26 Mis., 250.*

The assignee of a contract, if he seeks performance, must show a performance of all the stipulations which the assignor was bound to perform, to entitle him to it. *2 Johns. Cas., 438; 7 Paige, 301.*

Equity will never, at the instance of a vendor, compel the purchaser to receive a partial execution of the contract. *3 A. K. Marsh., 268.*

III. The slaves were a part of the whole property to which the vendors had agreed they would *alone* look for security and payment. This part having been lost, the security and means of payment must be considered gone *pro tanto ; (23 Geo., 237;)* and with this loss went, as we now submit, that portion of the debt represented by the value of the slaves, and secured to the vendee by the warranty.

Under the contract, the parties vendor cannot step outside of the property sold to enforce any portion of this debt ; they are estopped from such a course by the terms ·of the contract deliberately made, and clearly expressed in the deed. And now, Sheppard having already paid more than the value of the property that remains, we further submit that in no event can complainants go beyond that; and in equity and good conscience the consideration having failed as to entire value of the slaves, there should have been no decree against him.

There is another aspect of this case, viz : that by the terms

of the bargain there was to be no conveyance of title until full payment of the notes given for the purchase: "*when and whereupon* this deed shall become absolute and in fee simple."

As the legal title remained in Payne, no lien could arise in this case save that stipulated for, in and according to the contract. It is this express lien that the complainant can litigate for, and he has no grounds of suit, and can have none on an *implied lien.*

It was a mere agreement to convey, and, as the vendor retained the legal title there is no lien to enforce in this case; *7 S. & R., 64.* It must be wholly on the terms of the contract; and the complainant stands here in the attitude of a suitor for specific performance, acknowledging his own inability to perform on his part, yet asking that Sheppard shall not only fully perform his agreement but that complainant may have as against him, advantages and payments not stipulated for in the contract!

It is submitted that the courts cannot make any other contract for these parties than that which they have made for themselves, and that in case of the non-payment of the notes, (to put the case in the strongest aspect for the complainant,) he could only re-possess himself of the property, and that as between the parties to this suit, the legal title to the land being in others, it was error to decree a sale.

There is also another aspect of this case arising out of the recent change in the law of this State as applicable to a portion of the property constituting a part of the consideration of this agreement, viz: forty-six slaves, valued at between fifty and sixty thousand dollars, and as to which, and to that extent, in any event, the decree must be reformed. *Constitution of Arkansas, art. 14, sec. 14.*

*Bell & Carlton,* for appellee.

On behalf of appellee, we beg leave to submit the following considerations:

It is urged by appellant in assigning errors, in this case, that

the decree rendered for complainant is for the entire amount of the debt, damage and interest against the appellant *in personam*, and a lien upon his property and estate generally, and liable to be enforced by process of execution, and contend that by the terms and stipulations of the contract, the decree could only have been in the nature of a decree *in rem*, foreclosing and condemning to be sold the lands for the payment and satisfaction of any residue of the purchase money, appearing to remain unpaid.

We think in this assignment of errors appellant has mistaken the law.

The complainant's right to sue in this case, it will be observed, is by virtue of an *assignment* to him of three writings obligatory executed by appellant to James B. Payne and Elizabeth H. Robinson, for certain amounts of money, made payable at the Citizens' Bank, in the city of New Orleans, Louisiana, in money or New York exchange. There is no uncertainty or contingency in the three writings obligatory, either with regard to event, or with regard to the fund out of which the sums of money, specified in the writings obligatory, are to be made ; they are clearly *negotiable* instruments, and the conditions and stipulations of the deed of conveyance from Payne and Robinson to Sheppard, and in which a lien is reserved for the payment of said writings obligatory, cannot affect or destroy that *negotiability*. The rules of law that would govern in bills of exchange and promissory notes apply with equal force in this case, and the idea that the decree ought to have been *in rem*, and the condition in the deed of conveyance, making the payment of the money, specified in the bonds *contingent upon a particular fund* is to govern in this case, is so contrary to what we consider to be the law that will govern, that we scarcely deem it necessary to cite authorities to show the contrary.

A bill or note must *not* be made payable out of a particular fund, for the fund may prove insufficient ; *Byles on Bills, p. 165.* It is essential to a bill or note that it be payable in

money only, at all events, *and not out of a particular fund.*
*Atkinson v. Manks, 1 Cow., 691; Cook v. Satterlee, 6 Cow., 108;*
*Waters v. Carleton, 4 Port., 205; Hamilton v. Myrick, 3 Pike, 541;*
*Williamowicz v. Adams, 8 Eng., 12.*

The money must be payable at all events, not dependant
upon any contingency, either with regard to event or with
regard to the fund out of which payment is to be made, or the
parties by or to whom the payment is to be made; *Chitty on
Bills, pp. 135, 138.* The same rules are to be found in *Bailey
on Bills, p. 21; Story on Promissory Notes, p. 29.*

Any contingency to avoid the writing obligatory, assigned
by Payne and Robinson to the complainant, must be apparent
on the face of the writings or upon some contemporaneous
written memorandum on the same paper. "If not so, what-
ever may be its effect as a matter of defense between the origi-
nal parties, it is not deemed to be a part of the instrument, and
does not affect, much less invalidate its original character.
This is a general rule, and extends to all written contracts."
*Story on Promissory Notes, p. 26.*

"Our statute of assignments makes many instruments nego-
tiable which were not so before, but does not purport to change
the law merchant as to instruments before assignable—it merely
adds to their number." *Buckner v. Real Estate Bank, 5 Ark.,
p. 536.* We think it clear and beyond question, that the
writings obligatory assigned to complainant, and the payment
of which he seeks to enforce by his bill, mere negotiable instru-
ments, made so by our statute of assignments, and as such in
complainant's hands, as assignee, the condition of the deed of
conveyance, that the payment of the sums of money in the
bonds was to be made out of a particular fund, is an utterly
*null and void condition*, so far as complainant, (the assignee) is
concerned.

No question can now arise as to the negotiability of the
writings obligatory from appellant's right to pay off the bonds
in money or *New York exchange.* This condition of the bonds
was for the benefit of the maker, and his failure to avail him-

self of the privilege, when the obligations matured, amounted to a forfeiture of it, and the obligations became absolute and an action of debt for money could be supported upon them. *Gregory v. Bewly, 5 Ark., 320; Dorsey v. Lawrenee, Hardin, 508; Bizzell v. Williams & Blevins, 3 Eng., 140.*

Complainant, as appears from his bill, is the holder of the bonds by virtue of an assignment to him, by the original payees, for value received. He seeks to enforce the payment of his bonds, which he holds as assignee, by a bill to foreclose the lien reserved in the deed of conveyance from Payne and Robinson to appellant. Which·lien is in the nature of a mortgage, and nothing more than a collateral security to his bonds. *Easton v. Fisher, 1 Ark., p. 90.* There is nothing to be ·done or performed, either by Payne and Robinson or complainant, to entitle complainant to bring his suit. No question of specific performance can arise in this case. The deed ·of conveyance from Payne and Robinson to appellant, so far as the bargain, grant and conveyance of the property sold is concerned, is an *executed one* by Payne and Robinson, and in no sense could it be considered executory as to them.

The reservation of the lien in the deed, it seems to us, will be considered in the same light as though there had been an absolute conveyance, and a separate mortgage back.

It is urged also by appellant's counsel that the decree rendered in this cause, in the court below, is too broad. The authorities referred to in support of this position, we respectfully submit, merely decide that the decree must agree with the pleadings. In other words, that the decree cannot be based upon a fact not put in issue by the pleadings, and are entirely consistent with the decisions of our court, as rendered in the cases of *Maulding v. Scott, 13 Ark., 89; Cook v. Bronaugh, 13 Ark., 188; Fenno v. Coulter, 14 Ark., 45; Ross v. Davis, 17 Ark., 120.*

40

McClure, C. J.

It appears from the record in this case that, on the 25th of January, 1860, Payne and Robinson executed and delivered to James Sheppard a deed that recites:

"That in consideration of the sum of thirty thousand dollars, in hand paid, and the further sum of eighty-six thousand, one hundred and forty dollars to be paid us (them) by the said James Sheppard in five equal annual installments  *   *   *   * do hereby grant, bargain, sell and convey unto said Sheppard, the following described lands, negroes and personal property, in the county of Jefferson and State of Arkansas."

The deed describes six hundred and twenty acres of land, forty-six negro slaves and other personal property. Following this description are the usual covenants and warranty, as to the lands and slaves.

The deed further recites that it is made upon the condition: "that said Sheppard shall well and truly pay the said sum of $86 140, purchase money, remaining due and unpaid. That said $86 140, remaining due and unpaid as aforesaid, together with the interest and cost, shall be and remain a lien on the lands, slaves and personal property until the same shall be fully paid off and discharged, when and whereupon, *and not before*, this deed shall become absolute and in fee simple forever."

Payne and Robinson further retained the right "to subject the land, slaves and personal property, or any part thereof, to the payment of said sum of $86 140, or any part thereof, as the same may become due and payable," and expressly exempted, "all right, in law or equity, to recover the purchase money or any part thereof from any other lands, negroes or property of the said James Sheppard, but rely entirely on said lien for security and payment."

Sheppard executed his five writings obligatory for $17 288 each, and delivered them to Payne and Robinson. Two of these writings obligatory have been paid off by Sheppard.

The other three, falling due on the 1st of February, 1862–3 and 64, were, on the 1st of September, 1865, assigned to Samuel B. Thomas.

On the 19th of March, 1866, Thomas filed his bill, in the Jefferson county circuit court, setting up the sale by Payne and Robinson to Sheppard, and the assignment of the notes to himself. The relief asked is, for a decree against Sheppard, for said several sums of money and interest that remains unpaid, etc. That complainant's lien be enforced on all the increase of the aforesaid property, and that the aforesaid lands and personal property, that remain, be sold for the payment of complainant's debt, interest and costs, and if not sufficient to satisfy said debt, interest and costs, that the defendant be decreed to pay the amount of money that may have come into his hands for cotton, corn, hay and millet that may have been raised on the lands aforesaid, etc."

Sheppard in his answer admits the execution and delivery of the deed to him by Payne and Robinson; the payment of $30.000, and the execution and delivery of the five writings obligatory, and the assignment of said three writings to Thomas. He further states that in the original bargain and sale, the land was valued at $37.200 ; that the slaves were estimated and valued at $57.500 ; that the legal title to said slaves, by a special reservation in the deed, was retained by Payne and Robinson; that since said sale said slaves have been liberated by the act of the government and are now free ; that the consideration expressed in said deed, to the amount of $57.500, (the value of the slaves) has wholly failed, and prays that, inasmuch as the legal title to said slaves was held and specifically retained by said Payne and Robinson, on the final hearing of the case he may receive a credit for $57.500, as the value of said negro slaves; that Payne and Robinson cannot now make any title to.

At the hearing a decree was rendered against Sheppard for $66.791 54, debt and interest and declared to be a lien on said lands, in the nature of a mortgage ; that Sheppard's equity of

redemption therein be foreclosed and in default of payment on or before 6th of April, 1868, that said lands be sold to satisfy the decree, and in default of payment, that Thomas have execution, as at law, for the residue. From this decree Sheppard appealed to this court.

One of the questions to be determined in this case is: whether the deed executed, by Payne and Robinson, to Sheppard, conveyed *eo instanti*, an absolute estate in fee simple; or whether it conveys an estate upon condition. If the estate is conveyed "upon condition," the question then arises, is the condition precedent or subsequent? If precedent, the estate does not pass until the performance of the condition; if subsequent, the estate passed at the execution and delivery of the deed. Where the condition is precedent, the *grantee* elects whether he will perform; but where the condition is subsequent, the *grantor* elects as to whether he will re-enter the estate or waive the forfeiture, and compel a performance.

All law writers agree that there are no technical words to distinguish a condition precedent from a condition subsequent, and assert that the same words may create either, according to the intent of the person *who creates it. 1 Tenn. Rep. 645; 2 Caine, 252; 11 Vesey, 170.*

Now, if the condition be subsequent or precedent, "according to the intent of the party who creates it," the next inquiry will be to find out the intent of Payne and Robinson. This can only be done by referring to the language employed in the deed.

The deed contains all the formal and apt words of conveyance usually employed in the alienation of real property, and but for the provisos and conditions added thereto, would admit of but one construction.

There are three provisos in the deed; the first of which reads as follows: "*Provided always,* nevertheless, and this deed is made upon the condition that the said James Sheppard shall well and truly pay or cause to be paid the sum of $86,140, purchase money; remaining due and unpaid as aforesaid, with all

the interest that may accrue thereon, according to the tenor and effect of his said five writings obligatory." If this had been the sole proviso in the deed, an estate upon condition is all that would have passed to Sheppard, and, in default of the payment of the $86,140, Payne and Robinson could have reentered the realty by an action of ejectment; or they could have waived the forfeiture, and taken a judgment at law for the amount due them. This being true, the first proviso amounts to a condition subsequent.

The second proviso is: "that the said sum of $86,140, purchase money, so remaining due and unpaid, as aforesaid, together with all interest and costs that may accrue thereon, shall be and remain a *lien* on all and singular the lands, slaves and personalty, hereinbefore mentioned and described, and also on the increase thereof, and all additions that may be made thereto, until the same shall be fully paid off and discharged." If this proviso stopped at this point, the irresistible inference would be, that inasmuch as the grantors make use of the word "lien," that they intended to convey an absolute estate, subject to no conditions whatever; but it does not stop; it continues, and is concluded by the declaration, that, "when and whereupon and *not before*, this *deed* shall become absolute, and in fee simple forever." The closing language, of the second proviso, seems to declare that the *deed*, itself, shall not become absolute and in fee simple forever, until the payment of the entire purchase money. This declaration is not reconcilable with the retention of a "lien." The retention of *title*, and the reservation of a "lien" upon the same property is inconsistent with and at variance with the ordinary transactions of mankind.

The third proviso declares, in default of payment, or any part thereof, that Payne and Robinson "do hereby waive and relinquish all our right, in law or equity, to recover the same, or any part thereof, of, and from any other lands, negroes, or property of the said James Sheppard, but do hereby expressly exempt the same from all liability for the payment of said purchase money, so remaining due and unpaid, as aforesaid,

and rely entirely on said *lien* for security and payment." Here we have a clearly expressed intention, on the part of Payne and Robinson, that goes to show the vesting of an absolute estate in Sheppard. If such was not their intention, they would hardly have made use of the assertion that they "rely entirely on their said *"lien"* for *security* and *payment.* The assertion that they rely entirely on their "lien" for *security* and *payment,* negatives the idea that they intended to rely upon the retention of *title,* as in the case of a title bond, as a means of enforcing the purchase money.

Taking all the conditions and provisos together, and construing them in *para materia,* we are forced to the conclusion that the deed of Payne and Robinson to Sheppard passed an absolute estate, in fee simple, at the execution and delivery of the deed. The deed was acknowledged and filed for record on the 26th of January, 1860, which may be regarded as the date of the delivery.

This brings us to the consideration of a question that is not without precedent, and that is, was the "equitable lien" that Payne and Robinson retained to *themselves,* transferred to Thomas by the mere assignment of the notes?

This court held in *Shall v. Biscoe et al.,* (*18 Ark. 162*), that "where the widow conveys land by deed, taking the note of the vendee for the purchase money, a mere assignment of the note does not transfer to the assignee the benefit of the vendor's lien upon the land for the purchase money."

It is urged that the deed before the court, in *Shall v. Biscoe,* had no words specifically reserving the lien, as there is in this case. This is true. But does the reservation in this instance give to Payne and Robinson, or their assigns, a lien of a higher grade than they would have had if a deed had been executed in which no attempt had been made to retain a lien? If the words employed in the reservation of an equitable right amount to no more than a mere assertion of what the law is, such words are mere surplusage. Payne and Robinson, as vendors, had a lien against the lands sold for the purchase money

without any assertion of the fact in the body of the deed. This being true, can Payne and Robinson, by the mere recital of what the law is, make the vendor's lien assignable to Thomas, by a mere assignment of the note, in the ordinary course of business?

In *Moore & Cail v. Anders*, (*14 Ark.*, *635*,) this court said: "that the equitable lien of the vendor is *personal* to him, and *is not*, unless under some peculiar circumstances, assignable."

Thomas comes into a court of equity and asks that the property described in the deed of Payne and Robinson to Sheppard, be sold to pay his notes. There is no allegation in his bill that he became subrogated to the personal or equitable rights of the vendors, nor is there anything in the bill showing any peculiar equitable circumstances attending the assignment to him. By his bill he stands before this court as a purchaser in the ordinary course of business. He bases his claim to enter a court of equity, on the bare fact that, because a vendor's lien is asserted in the deed, Payne and Robinson assigned that lien to him when they assigned the notes.

The clause in the deed, by which the lien is said to be created, and which Thomas claims was assigned to him by the mere assignment of the notes, reads as follows :

"And we, the said James B. Payne and Elizabeth H. Robinson, herein and hereby reserving and retaining an *equitable lien*, on all and singular the lands, negroes and personal property, with the increase thereof, with the right to subject the same to the payment of said sum of $86,140, purchase money, so remaining due and unpaid as aforesaid or any part thereof; * * in default of payment, or any part thereof, do hereby waive and relinquish all our right in law or equity, to recover the same or any part thereof, from any other lands or negroes of said James Sheppard, but do hereby expressly exempt the same from all liability from the payment of said purchase money, so remaining due and unpaid as aforesaid, and rely entirely on our said lien for security and payment."

It will be observed that the reservation of lien, by the terms

of the deed, is to Payne and Robinson, *personally*, and not to themselves, heirs or *assigns*. At the time of the execution of the deed, the uniform holding of this court was, that the lien of the vendor was personal. The inference to be drawn from this fact is, that if an *assignable* lien was intended to have been created, that words to that effect would have been employed. This court has frequently held that, where a title bond is executed, the assignment of the notes, given for the purchase money, carrys with it the vendor's lien; but this holding is placed upon the ground that *no title* has passed. In the case of a mortgage, it has held that the assignment of the notes, described in the mortgage, gave to the holder the right to come into a court of equity and ask a foreclosure; but this deed is in no manner similar to a mortgage. In a mortgage, the property is conveyed absolutely, to secure the payment of money or other property; or to secure the performance of some act or duty. The deed in this case was executed, not to secure the payment of money, but for the purpose of conveying title. In the case of a *title* bond, and in the case of a mortgage, the *title* remains in the person to whom the money or other property is due; but in this case, the title has passed to the grantee, and the grantor has covenanted to "rely entirely on the said lien for security and payment." The difference is, that in the case of a title bond, or in the case of a mortgage, the creditor relies on a *legal title* for security and payment, and in the case now before us, the creditor relies on his equitable lien for security and payment. The lien given by the mortgage is the act of the debtor; its manner and mode of execution is fixed by the statute of the State, and may be regarded as purely a legal lien. The best evidence that these parties did not intend to create a "lien in the nature of a mortgage," is, that they described the lien retained by them as "an equitable lien." The phrase, "equitable lien," has a well defined and fixed meaning, and includes such liens as are cognizable in a court of equity only. The words descriptive of the lien retained in this case are well known to the law, and if there is one prin-

ciple of the law better settled than another, it is that where a party uses technical language in a deed or other instrument, the law presumes he intended it to be understood in a technical sense.

There are many things that enter into every contract in writing that is not expressed, or if expressed, would be a mere reiteration of what the law is. It is laid down in Broom's Legal Maxims, that "the expression of a clause which the law implies, works nothing," and as an illustration says: "if land be let to two persons for the term of their lives, this creates a joint tenancy; and if the words, "*and the survivor of them*" are added, they will be mere surplusage, because by law, the term would go to the survivor." *Brown's Legal Maxims, 424.*

Judge PARSONS says, "if the parties have provided nothing different, but the very same thing which the law would have implied, that the provision may be regarded as made twice, once by the parties and once by the law. And as one of these is surplusage, that made by the parties is deemed to be so, and hence, is derived the rule of construction, that "the expression of those things which the law implies, works nothing." Under the decisions in this State, for the last twenty years, the expression in a title bond, that the vendor retained or reserved a lien for the purchase money, would have been regarded as a work of superfluity, because the courts of this State had held that the vendor had a lien without any such assertion.

In cases where the vendor had passed title by deed, the holding of this court has been that the vendor retained a lien for the payment of the purchase money. If Payne and Robinson, the vendors, had brought suit on these notes, they could as well have enforced their lien, in the absence of any words retaining an "equitable lien," as they could by their assertion.

If A executes his note and agrees to pay six per centum interest after maturity, the holder takes nothing by reason of the words "six per centum," because the law would have given six per centum interest in the absence of those words, and so

we conceive Payne and Robinson would have had "an equitable lien" without any stipulation.

Now the question arises, can Thomas construe this "equitable lien" into a lien by contract? Unless he can, the lien is not assignable. An "equitable lien," by contract, is to us an unheard of thing. Chancellor Kitty, in *Iglehart v. Armigeo*, (*1 Bland's Chancery, Md.,*) says "an *equitable lien* is an incumbrance on land which *can only be held by the vendor;* that an assignee of the vendor can derive no benefit from such lien, nor can it be assigned like a bond or mortgage."

We have already shown that Payne and Robinson could have as well enforced the vendor's lien, in the absence of the assertion of its retention, as they could have done, if it had not been asserted, and the reason for this is, that the law *implied* the lien. It is an universal rule that the vendee must show a waiver of the lien of the vendor, and that if he fails the law will presume its retention. If this be so, the assertion of the retention of an "equitable lien," was a work of supererogation, which Judge PARSONS says, is mere surplusage, by which the party takes nothing.

This brings the case within the rule laid down in *Shall v. Biscoe*, if the words, retaining the vendor's lien, are to be treated as surplusage. This case stands precisely in the condition that that case was when this court declared, "that a mere assignment of the notes given for the purchase money, does not transfer to the assignee the benefit of the vendor's lien on the land for the purchase money."

This thing, called an "equitable lien," is not a product of this country, it comes to us with the equity practice derived from the mother country. It is a well established rule of the law that, in adopting the laws of another State, the rule of construction adopted in that country should be allowed. In all the English books, we have been unable to find a case, wherein it is asserted, that an "equitable lien" *may be assigned* or that it virtually passed along with the assignment of the bonds given for the purchase money.

The decree of the Jefferson circuit court is reversed and set aside, and the cause is remanded with instruction to dismiss the bill for want of equity.

GREGG, J. and WHYTOCK, (Special J.) dissenting, say:

There are several important questions in this case, the most difficult of which seem to arise upon a construction of the deed from Payne and Robinson to Sheppard, (except detailed descriptions of property, not necessary to a clear understanding and proper construction of the deed), it is as follows, to-wit:

"Know all men by these presents that we, James B. Payne and Elizabeth Robinson, in consideration of the sum of thirty thousand dollars, to us in hand paid by James Sheppard, and of the further sum of eighty-six thousand one hundred and forty dollars to be paid to us by the said James Sheppard, in five equal annual installments, to wit: the sum of seventeen thousand two hundred and twenty-eight dollars on the first day of February, 1862, the like sum of seventeen thousand two hundred and twenty-eight dollars on the first day of February, 1863, the like sum of seventeen thousand two hundred and twenty-eight dollars on the first day of February, 1864, and the residue or like sum of seventeen thousand two hundred and twenty eight dollars on the first day of February, A. D. 1865, all of said installments without interest until maturity, but if not paid at maturity, then to bear interest at the rate of eight per cent per annum from due until paid, payable at the Citizens Bank, in the city of New Orleans, La., in money or New York exchange, with the privilege to the said James Sheppard to pay off the same, or any part thereof, at any time before maturity, at eight per cent per annum discount, by depositing the money or New York exchange for that purpose in said bank to the credit of the said Payne and Robinson, and the certificate of deposit of said bank therefor, shall be evidence of such payment, according to the tenor and effect of the five several writings obligatory of the said James

Sheppard, of even date herewith, now executed and delivered to us, payable as aforesaid, reference being thereto had will more fully appear, do hereby grant, bargain sell and convey, unto the said James Sheppard, the following described lands, negroes and personal property, situate and being in the county of Jefferson and State of Arkansas, to-wit: The east half of the north east quarter of section thirty-one, etc. etc., in Township five south of Range eight west, etc., containing together six hundred and twenty acres, (620) more or less, of land, together with all and singular the privileges and appurtenances thereunto in any wise belonging, the same being and constituting the plantation now occupied and cultivated by us, the said Payne and Robinson, and also the following named negro slaves, forty-six in number, now on said plantation, to-wit: Jack, Floyd, etc. etc., and also the following described personal property, now on said plantation, to-wit: two thousand bushels of corn, five work horses, one saddle horse, seventeen mules, etc., on the place. To have and to hold all and singular the lands, slaves and personal property aforesaid, to the said James Sheppard, his heirs and assigns forever, hereby covenanting with the said James Sheppard, his heirs and assigns, that we the said James Payne and Elizabeth Robinson are lawfully seized in fee of said land, have a good right to sell and convey the same and that we will, our heirs, executors and administrators shall warrant and defend the title thereto against the lawful claims of all persons, and also that said negroes are all slaves for life, and that we will, our heirs, executors and administrators shall warrant and forever defend the title to said negro slaves, and all and singular the personal property aforesaid, unto the said James Sheppard, and his heirs and assigns against the lawful claims and demands of all persons whomsoever, and for the consideration aforesaid, and I, Mary Payne, wife to the said James B. Payne, do hereby release and forever quit claim unto said James Sheppard, his heirs and assigns, all my right, claim, or possibility of dower in or out of the aforementioned premises.

"*Provided always, nevertheless,* And that this deed is made upon the condition, that the said James Sheppard shall well and truly pay, or cause to be paid, the said sum of eighty-six thousand one hundred and forty dollars, purchase money, remaining due and unpaid, as aforesaid, with all interest that may accrue thereon, and according to the tenor and effect of his said several five writings obligatory, therefor, as aforesaid; and furthermore, that the said sum of eighty-six thousand one hundred and forty dollars, purchase money, so remaining due and unpaid, as aforesaid, together with all interest and costs that may accrue thereon, shall be, and remain a lien on all and singular, the lands, slaves and personalty hereinbefore mentioned and described; and also, on the increase thereof, and all additions that may hereafter be made thereto, until the same shall be fully paid off and discharged, when and whereupon, and not before, this deed shall become absolute and in fee simple forever, and we, the said James B. Payne and Elizabeth Robinson, herein and hereby retaining and reserving our equitable lien, and all and singular the lands, slaves and personalty, with the increase thereof, and all additions that may be made hereafter, thereto, as aforesaid, with the right to subject the same, or any part thereof, to the payment of the said sum of eighty-six thousand and one hundred and forty dollars, purchase money, so remaining due and unpaid, as aforesaid, or any part thereof, as the same may fall due and become payable as aforesaid, and in default of the payment thereof, or any part thereof, do hereby waive and relinquish all our rights in law or equity to recover the same or any part thereof, of and from any other lands, negroes or property of the said James Sheppard, but do hereby expressly exempt the same from any liability for the payment of said purchase money, so remaining due and unpaid, as aforesaid, and rely entirely on our said lien, for security and payment thereof, as aforesaid.

In testimony whereof, we, the said James B. Payne, and Mary, his wife, and Elizabeth H. Robinson, have hereunto set

our hands and seals, at the county of Jefferson, in the State of Arkansas, on this, the 25th day of January, A. D. 1860.

                    JAMES B. PAYNE, (Seal.)

                    MARY PAYNE, (Seal.)

                    ELIZABETH H. ROBINSON, (Seal.)

We concur with the majority of the court that this deed does not evidence a mere agreement to convey nor a conditional sale, but upon its face shows a conveyance in fee, to the vendee. *Gullett & Wade v. Lamberton*, 6 *Ark.*, 109; *Muller v. Ruggs*, 25 *Cal.* 187; *Jackson et al. v. Blodgett*, 16 *Johns.* 172; 38 *N. H.* 218; 36 *Maine*, 315; 1 *Kernon N. Y.* 320; *Davis v. Tarwater*, 15 *Ark.* 287.

We are of opinion that this being an equitable proceeding, presents the question as to the validity of contracts made for slave property, but, without argument, we will treat that as settled in the cases of *Dorris v. Grace*, 24 *Ark.*, 326; *Haskel v. Sevier*, 25 *Ark.*, 152; *Jackoway, adm'r., v. Denton*, 25 *Ark.*, 625, and *Pillow v. Pointer's exr's.*, 26 *Ark.*, 240.

We concur in the declaration of the court that Payne and Robinson could have enforced a lien against the lands. But we dissent from the holding of the court that Thomas cannot, as such assignee, enforce such lien.

There are two kinds of vendor's liens; a lien by express contract, or by agreement between the parties, and there is an equitable lien arising between the parties, where an absolute conveyance is made and no expression of an intention to reserve a lien is had; this latter lien is purely a creature of the law, and between the parties is enforced in equity, because it is unjust that one should hold the land of another, and not pay the purchase price. This lien is personal between the parties, or their privies, and where innocent parties come in, or the notes pass off in the course of trade into the hands of third parties, such equities no longer exist, and no liens can be enforced.

But where a vendor stipulates for a lien to secure the payment of the purchase price, and gives the proper notice to all

who may be concerned, such lien, then, becomes a security for such purchase, and may be enforced by the vendor, or he may assign it to another, and such holder may enforce it, because all the world having notice of the existence of such lien, there can be no innocent purchaser, and all being notified that the purchase money remains due and unpaid, equity and justice requires that it should be paid before any other incumbrance should attach upon the land, and all subsequent contractors must stipulate to meet such equities; *Terry v. George,* *37 Miss.;* *Amory v. Reely, 9 Ind., 490; 21 Cal. 178.*

And we hold that it is not material whether this lien is reserved by a separate contract as by mortgage, or by an agreement in the deed of conveyance; in the first instance, the vendor parts with the whole title, and then has a right of lien reconveyed to him; in the latter, he parts with all his title except a right of lien, and that he reserves to himself to secure the purchase money, and in either case the property belongs to the vendee; but the vendor has the right to enforce the payment of the purchase price, out of it, before any assignee of the vendee can have a perfect title.

And we hold that, in deeds, as well as in parol contracts, it is wholly immaterial what form of words the parties use, so that the language sufficiently evidences the intention of the parties; from the whole instrument executed, we are to arrive at their meaning, the understanding had between the parties. In the case of *Davis v. Tarwater, 15 Ark., 287;* this court said: "The intent, and not the words, is the essence of every contract. In the construction of deeds we are to consider the entire instrument, and not any particular part of it, and such exposition should be given as that every part of a deed may, if possible, take effect and every word operate."

Courts of equity are not so much, as courts of law, bound by the form of words. Equity seeks for the intention of the contracting parties, and decrees that such intention be carried out; and while there may be finely wrought distinctions between liens secured by mortgage and those otherwise incorporated

into the contract by the parties in purely courts of law, such discriminations do not exist in a court of equity. At law, the mortgagee may claim a legal title, but in equity, the substance of the estate, the body of the thing, is in the mortgagor, and the mortgagee has a mere trusteeship to secure the performance of some acts, or the payment of certain moneys; *Johnson's Exrs. v. Clark, 5 Ark., 335; 4 Kent Com. 135, et seq.* These distinctions should not be lost sight of when, as in this case, we are investigating rights in a court of equity.

Now we repeat that courts of equity look to the actual intention of the contracting parties, and endeavor to carry out that intention, and it is wholly immaterial whether that intention is expressed in one instrument or in more than one, so that by examining the various steps in the agreement, the will of the parties can be known.

In *Blakemore v. Byrneside, 7 Ark., 508,* this court said: "In equity, the character of the conveyance is determined by the clear and certain intention of the parties. A deed absolute on its face and registered as such, will be valid and effectual as a mortgage between the parties, if it were intended by them to be merely a security for a debt." In the case of the *Planters' Bank v. Courtney, 1 S. and M., 40,* wherein the vendor sold a lot of land, gave his notes and stipulated in the deed that the lot was to be bound until both the notes were fully paid and satisfied; the notes had been assigned to the banks after the lots had been sold under execution to Isely, who sold to Henry Courtney, and he, to the defendant; the bill prayed a foreclosure. The answer set up that the original notes had been paid off and canceled, and others, with personal security, taken in satisfaction of the first, etc. The court said *the only question* was, whether the present notes were taken in satisfaction of the lien, not even doubting the propriety of foreclosing the equity of redemption, if the notes had not been satisfied. And, in this case, the notes and lands had both passed out of the hands of the original parties.

In a later case the same court approve of this opinion, and

further declare an indorsement on a deed to constitute a mortgage in equity. *Baldwin et al. v. Jenkins, et al. 23 Miss.*

In Pennsylvania, the policy of the law has always been against equitable liens, and her courts have persistently disallowed them. The Superior Court of that State said: "Equitable liens, though long prevalent in English and some of the American courts of chancery, was never intended to be admitted into Pennsylvania jurisprudence."

But in the case of *Heister v. Green, 48 Penn. S. 101 and 102,* the court of appeals say: "The sum of the authorities is, that though equitable liens are not favored by our law, yet parties may, by clear and express words, in deeds of conveyance, create liens upon lands, either for purchase money or for the performance of collateral conditions," etc.

If these rules be admitted, we then have to examine the deed and find out the intent of the parties. Did they, by this instrument, intend to sell and transfer the lands and personal property, specified in this deed, to Sheppard? It is clear that they did. This question is settled by the whole court. Next, did they intend to reserve a lien, upon this property, to secure the payment of the purchase money? Immediately after the close of that clause in the deed vesting the title in Sheppard and his heirs, they proceed to say, "the deed is made upon the condition that he pay the remainder of the purchase money, and that the said sum of $86,140, together with all interest that may accrue thereon, shall be and remain a *lien* on all and singular the lands, slaves and personal property hereinbefore mentioned," etc. Is this language not clear and explicit? Does it not show the intention of the parties? It does not declare that a lien is reserved to hold Payne and Robinson *harmless,* but the lien is to *secure the payment of all the purchase money and interest,* and upon such full payment the deed is to become absolute. Then follows a clause in which they say, retaining their equitable lien on this property for this sum, they relinquish all rights to collect any part of the amount,

41

out of any other property of said Sheppard, and they rely entirely on their said lien for security and payment.

Now, if Payne and Robinson did not intend to retain a lien by contract, if it was not intended as a part of the agreement, why should they as often as three times, announce that such lien was retained? In this, we not only have the express language of the grantors that they retain a lien, but another fact showing why they retained it; that is giving the best reason for its retention, that was, they were parting with $86,140 worth of property, and releasing all right to collect anything, except out of the property they were turning over to Sheppard. If it can be made more clear, this certainly gives force to their positive assertion, that they do retain a lien.

Now, it seems to us, the majority of the court commit a mistake, wherein they say: The clause in the deed by which the lien is said to be executed, and which Thomas claims was assigned to him by the mere assignment of the notes reads as follows: "And we the said James B. Payne and Elizabeth Robinson, herein and hereby reserving and retaining our equitable lien on all and singular the lands" etc. etc., "and release all other property" etc. etc. Now this clause, in the deed, is not the clause by which the lien is created and declared. The object of this clause was to release Sheppard from liability, so far as all other property was concerned, and it only contained a reference to the lien, the amount unpaid and the property upon which they relied for payment.

It was the preceding clause that announced that the property was conveyed upon condition that Sheppard should pay all the balance of the purchase money, and that they retained a lien thereon for the amount due, and that upon the payment of that sum and interest, and not before, Sheppard's title should be absolute. This is the clause limiting Sheppard's title, and nothing is said about the lien being equitable; but in this emphatic manner they declare their lien shall exist, and Sheppard's title shall not be absolute and in fee until the payment of all this money. But if the draftsman of the deed had used

terms less appropriate or inappropriate, a court of equity would have reviewed the whole transaction and decreed according to the meaning of the contracting parties, and without hesitating at the use of an improper or inappropriate word. And there is certainly a marked difference between an equitable lien that is created solely by the law, and one created by agreement or contract between the parties. The equitable lien arises out of the relationship between the parties; the peculiar circumstances surrounding them, which show that injustice would be done for one to hold property without compensating the former holder; while a legal lien or lien by contract is where the original owner stipulates that a lien shall exist for the payment of the money or performance of some stipulation, and we hold that it is wholly immaterial whether the lien is by reservation in the deed of conveyance or whether that deed is absolute, and a reconveyance by mortgage as security, and that in equity no distinction is made. Is it not clear, if one has an absolute title to property, he can convey the whole of it, or just such part as he chooses? May he not make a deed to pass title at once, or upon condition, or at a fixed time in the future? May he not fix the title in one and the use or profits in another, or reserve the use of a part thereof to himself, etc. etc? He can sell what he chooses and reserve what he desires, and when he only conveys a legal estate, and retains a right to collect so much purchase money as may be unpaid, that much interest in the estate is as effectively and legally in him as it can be, because he held all interest, and to that extent it has been conveyed away.

But the majority say, Payne and Robinson had a lien upon the land for the payment of the purchase money, without having this reservation in the deed, and therefore, the reservation was surplusage; it was a work of supererogation to insert such clause in the deed, and the deed meant no more with this clause than the law implied without it. Can I not say, with the same force of argument, that there is no use in a vendor taking a deed of mortgage to secure his unpaid purchase

money; that notwithstanding his deed is absolute on its face, equity gives him a lien for that money, and it is a work of supererogation to take a mortgage? Suppose the court should say, without a mortgage an assignee can not enforce payment out of these lands, or an innocent purchaser might get these lands, we repeat the same argument. In this instance, the lien was reserved, not alone to Payne and Robinson, but to secure the payment of the purchase money, in whose hands soever, and the lien was patent upon the face of the deed; and Sheppard could convey to no one who could be an innocent purchaser, because when they looked upon his title, they would see the amount to pay before the title in him was absolute, and when he registered that deed, then the public records gave notice to the world of the amount to be paid before the title in Sheppard was clear; and the deed set out a full description of the notes which were to be paid. Then it seems evident that a lien by contract is preferable to a mere equitable one, and it will be seen by carefully examining this deed that every clause on that subject declares this lien for the *security of the purchase money*, and to say that it is not more than an equitable lien that can reach no further than to Payne and Robinson personally, is a construction we do not sanction.

The majority held that the parties, contracting, must be presumed to use terms, in conveyancing, with an understanding of the law, and the former decisions of our courts. If so, the draftsman of this deed must have known that Payne and Robinson had an equitable lien to secure them, without any reservation in the deed. Knowing that when they inserted in the deed a clause declaring that a lien was reserved until the purchase money and interest was all paid, they necessarily meant more than an equitable lien; they meant a lien that would attach the property until the notes were paid, and if they meant that, this court, in the case of *Davis v. Tarwater*, said their meaning and intention must be carried out by the court of chancery.

In the case of *Heist v. Baker, 49 Penn. S., 13*, where a deed

conveyed the lands in fee with this clause, "under and subject, nevertheless, to the payment of the sum of $932 52, at the decease of the said Elizabeth Gross, unto the above named Anna Eliza," etc., the court said, "The ruling of the learned judge is resisted on the authority of *Heister v. Green, 12 Wright. 96*, but this is the very converse of that case. There was no express charge upon the land, and here there is. Such is our repugnance to implied or constructive liens that we refused to treat a recitation of unpaid purchase money as a lien, though standing in the channel of title, and we desire to be understood as having refused, after great consideration of the subject, but where it is expressly charged, the lien must be supported. It is the distinction between express and implied liens." We allude to this because Pennsylvania, above all other States, opposes implied or equitable liens, yet they uphold a lien expressed on the face of the deed. See *Royer v. McCook, et al., 7 Ala., 318; Anthony v. Smith, 9 Hump. 508; Claner v. Rawlings et al., 9 S. & M. 122*. In the case of *Murray v. Able, 19 Tex. 213*, the Supreme Court say: "Able sues for the use of Mills and Jockusch, on notes given to Able in the purchase of land, and the vendor's lien on the land is expressly reserved in the notes; the court enforced the lien; also, see *McAlpine et al. v. Burnett et al., 19 Tex. 497 and 1 Tex. 326; Haley v. Bennett, 5 Porter, 452; Eskridge v. McClure and Walker, 2 Yerger, 84*. In the case of *Lewis v. Carilland, 21 Cal., 178*, Burlingame executed, to Carilland and Nye, a warranty deed, of which the consideration clause is as follows: "In consideration of the sum of ten thousand dollars, received to their full satisfaction of Charles Carilland and M. E. Nye, both of the same county and State, aforesaid, grantees, to be paid as follows: $4,000 in cash down, and the balance, by the assuming, on the part of the said grantees, the payment of a certain mortgage upon the property hereinafter described, made by the above described Joel Burlingame, on the 7th day of August, 1855, in favor of T. N. E. Lewis, for $6,000."

On the 25th of September, 1857, Carilland and Lewis agreed

to release the mortgage, and Carilland gave two notes and a mortgage, but not for enough to cover the original $6,000 claim; and Lewis gave up the first mortgage, and entered upon the record thereof satisfied by being released. In 1858, Burlingame assigned, by a written instrument to Lewis, any and all right or claims he might have against the parties and the lots, and the Supreme Court held that for this old claim, Lewis could enforce a vendor's lien; the mortgage had been released, but the original deed showed upon its face that part of the purchase money had not been paid.

*Stratton v. Gold, 40 Miss. 778,* is a case exactly in point, in which that Supreme Court says: "Here the lien is retained in the very deed which conveyed title to the vendee, which must necessarily be recorded, and of which every purchaser must take notice; and for all the reasons upon which equitable rights in such cases are founded, it appears to differ in no substantial respect from a technical mortgage. It contained the express contract of the parties, and was shown in such a way that all persons were bound to take notice of it. In principle, and as to the substantial rights of the parties, it does not differ from a technical mortgage, and in case of such a mortgage, it is held that a legal transfer of the note secured is an assignment of the mortgage," etc.

We cannot quote all that is applicable, because the whole opinion is a strong argument in favor of the views we entertain, and the judgment directly against the majority of this court.

In the case of *Bowen v. Gilman, 4 Wheat. 290,* which grew out of a sale and deed of lands, from the Georgia land company to the New England land company, Chief Justice MARSHALL, in delivering the opinion of the Supreme Court of the United States, said: "In examining this question, the nature of the contract, the motives of the New England and Mississippi companies, and their acts are all to be considered. * * * * In the original agreement an express stipulation is made that the property shall remain liable for the first payment, but the

separate securities shall be taken for the residue of the purchase money. The deed itself remains an escrow until the first payment shall be made, and is then to be delivered as the deed of the parties, after which the vendor's consent to rely on the several notes of the respective purchasers; this is *equivalent to a mortgage of the premises, to secure the first payment,* and a consent to rely on the several notes of the purchasers for the residue of the purchase money. The express contract that the lien shall be retained to a specified extent, is equivalent to a waiver of that lien to any greater extent."

The Supreme Court of Kentucky holds that a recitation in a deed that the purchase money has not been paid, or that it is to be paid in a certain manner, is constructive notice of the lien, and that the lands, in the hands of one holding under the vendee, are subject to the original lien, and that such subsequent holder cannot be an innocent purchaser, because he is bound to take notice of the recitation in the deed to his vendor, and that affects him with notice. *Honore v. Bakewell et al.* 6 B. Mon. 67; *Thornton, v. Knox, etc., Ib. 74; Woodward v. Woodward, 7 B. Mon. 116.* For these reasons we have not concurred with the majority.