CAMPBELL VS. RANKIN et al.

VENDORS LIEN: *When and how assignee may enforce, etc.*

Where lands are sold and notes executed by the vendee for the purchase money, and the vendor in the face of the deed retains a lien upon the lands for the payment of the notes, and the assignee, or holder of one of the notes, brings before a court of equity the vendor as well as the vendee, and the holders of the notes given for the purchase money of the lands, and asks that the holders of the notes be subrogated to the right of the vendor, and the lands be sold, etc., the rule of decision as held by this court, that the assignment of a note secured by a lien reserved in the face of the deed does not transfer the lien to the assignee, so as to enable him to maintain a bill, in his own right, against the vendee to inforce the lien upon the lands, does not apply.

APPEAL from *Phillips* Circuit Court.

HON. JOHN E. BENNETT, Circuit Judge.

*Garland & Nash*, for appellant.

*Palmer & Sanders* and *U. M. Rose*, for appellees.

ENGLISH, Sp. J.   This was a bill to enforce a vendor's lien, etc.   The bill was filed by Leonidas A. Campbell, in the Phillips circuit court, in October, 1866, and its material allegations are as follows:

In January, 1861, Robert P. Rankin sold to Archibald T. Dobbins for $210,000, a large plantation in Phillips county, with the slaves, horses, mules, cattle, hogs, etc. thereon.   Dobbins paid Rankin $25,000 of the purchase money in cash, and

agreed to pay the remainder in seven annual installments, which were subdivided and evidenced by thirty-two notes, one of which was for $9,000, payable January 12, 1862. By deed bearing date the 13th of January, acknowledged and delivered on the 7th and recorded on the 11th of March, 1861, Rankin and wife conveyed the property, real and personal, to Dobbins. The deed states the terms of the contract of sale, describes the property and all the notes, by dates, amounts, etc., given for the purchase money; conveys the property to Dobbins, and retains a lien on all of the property conveyed to secure the payment of the notes, in the following words : " It is further contracted and agreed, however, that said parties of the first part, in order to secure the payment of each and all the deferred payments aforesaid, evidenced by the notes aforesaid, do hereby retain a lien on all real estate, slaves and other personal property herein above conveyed, and upon all increase of said slaves which may take place between this time and the payment of all the said notes; and they will hold and retain said lien on all said property, real and personal, until such time as the whole consideration of the sale herein above set forth is finally paid."

Some time in the year 1861, Rankin indorsed the note for $9,000, payable the 12th of January, 1862, to Campbell. The note is an ordinary promissory note, dated at New Orleans, payable to the order of Rankin at the bank of Louisana, in New Orleans, for value received, bearing eight per cent. interest; the indorsement: " Pay Leondias A. Campbell," signed by Rankin.

The bill alleges that Campbell took this note in due course of trade, and that no part of it had been paid, and that by the assignment of the note, he had become the mortgagee of Dobbins and subrogated to all the rights of Rankin under said deed and mortgage, for the collection and security of said

note, etc. That Ward, Hunt & Co., were the owners and assignees of four of the notes secured by the deed, which are described. That James O. Harrison was the owner of one of the notes, and the Northern Bank of Kentucky another, and that complainant had made diligent inquiry, but had not been able to ascertain who were the owners of the other notes described in the deed, nor how many of them were unpaid.

He prays that Rankin and Dobbins, both of whom are made defendants, be required to discover which of the notes described in the deed were unpaid, and who were the owners and holders, thereof, that when discovered, they might be made defendants, with the holders of notes above named.

The bill further alleges that Rankin was in possession of the lands described in the deed, holding and claiming the same under some contract or agreement with Dobbins, but that he held them charged with all the equities created by the mortgage lien retained in the deed, which had become vested in the complainant by the assignment of said note to him, etc.

That by the proclamation of the president of the United States, and the constitution and laws of the state of Arkansas, the slaves mentioned in the deed had been emancipated, and that all the other personal property had been wasted or destroyed by the ravages of the late war, leaving no portion of the mortgaged property upon which the lien existed that could be subjected to the payment of the debts except the real estate described in the deed.

Prayer for discovery, as above: That the lien retained in the deed be decreed to operate as a mortgage upon the property therein described, to secure the payment of the unpaid purchase money expressed in the deed and evidenced by the notes; that the court marshal the debts secured by the mortgage, and ascertain the amount of purchase money remaining unpaid, and a lien on the lands; that complainant be subro-

gated to the rights of Rankin, etc.; that the holders of the notes above named, and others when discovered and made parties, be required to unite with complainant in the enforcement of the lien retained in the deed; that the amount of debt remaining unpaid be declared a lien on the lands, etc.; that a decree be rendered for the whole amount of the debt and interest, etc., and the lands sold for the satisfaction thereof, and the fund brought into court and appropriated in payment of the notes, etc.; that Rankin be decreed to hold the possession of the lands subject to the lien retained in his deed to Dobbins, and that upon a sale of the lands, he be required to deliver possession thereof to the purchaser, and that the equity of redemption of Dobbins, or Rankin, etc., in the lands be barred and foreclosed, and for general relief.

Rankin filed a demurrer to the bill, which was sustained, and the bill amended.

Harrison and the Northern Bank of Kentucky entered their appearance, and consented that a decree might be entered in accordance with the prayer of the bill.

A decree *pro confesso* was entered against Dobbins, Hunt and Ward.

Rankin filed an answer to the bill as amended, which contained a demurrer.

In the answer he admits the sale of the lands, etc., to Dobbins, the execution of the note, the deed, the retaining of the lien upon the property, etc., as alleged in the bill; but denies that the lien was a mortgage, and avers that it was personal, and not transferred by assignment of the notes. Admits the emancipation of the slaves, the waste of the other personal property, the assignment of the note for nine thousand dollars to Campbell, and that no part of it had been paid. Denies that by the assignment of the note complainant had become the mortgagee of Dobbins, and subrogated to the rights of

Rankin, etc. Admits that all of the notes executed by Dobbins to him were unpaid, and states the names of the holders thereof, so far as he knew them. Admits that he was "in possession of the lands under and by virtue of an arrangement with Dobbins," and insists, by way of demurrer, that the note sued on was not a lien upon the lands described in the deed in favor of complainant, as assignee thereof.

The complainant filed a replication to the answer of Rankin, and the cause was continued. At a subsequent term the demurrer of Rankin was submitted, and sustained, etc. Campbell appealed.

In *Shall, Adm'r, et al. v. Biscoe*, 18 Ark., 162, it was held, on weight of authority, that where the vendor conveys land by deed, taking the note of the vendee for the purchase money (and reserving no lien in the face of the deed for the payment of the note), a mere assignment of the note does not transfer to the assignee the benefit of the vendor's equitable lien upon the land for the payment of the purchase money. This case was approved in *Williams et al. vs. Christian et al.*, 23 Ark., 257.

In *Smith v. Robinson et al.*, 13 Ark., 533, it was held that where the vendor gives a bond to make title on the payment of the note for the purchase money by the vendee, the transaction is a security for the debt, and the same in effect as the making of a deed, and taking a mortgage back to secure the payment of the note.

And in *Moore and Cail, Adm'rs, v. Anders*, 14 Ark., 635, that the assignment of a note thus secured, carried the lien or security with it, as an incident to the debt. In this case the court said: "Whenever we assimilate the sale of land, by means of a bond, etc., to make title on payment of the purchase money to a conveyance, and mortgage back to secure the same end, the usual incidents of a mortgage attach to the transaction, and the rights of the parties growing out of it are to be gov-

erned by analogous rules. The weight of authority no doubt is that the equitable lien of the vendor is personal to him, and is not, unless under some peculiar equitable circumstances, assignable," etc. * * But, "clearly the lien, under a bond for title on payment of the purchase money, being expressly reserved by contract tantamount to a mortgage security for the benefit of the vendor, and the note for the purchase money transferable like any other chose in action made assignable by law, the assignment of the note tacitly carries with it the vendor's lien by way of mortgage security, and as an incident to the debt. The value of the note as a negotiable instrument in the hands of the vendor would be impaired, if the security could not accompany a transfer of it to an assignee," etc.

In *Williams el al. v. Christian et al.*, 23 Ark., 256, held that where a note for purchase money thus secured is assigned by the vendor without recourse, the lien does not pass by the assignment, but the assignee implicitly relies on the personal responsibility of the maker of the note.

In *Crowley v. Riggs et al.*, 24 Ark., 563, it was held that the equitable lien of the vendor might be enforced by one holding the notes of the vendee as collateral security for the payment of a debt of a vendor; that the holder of the notes was subrogated to the equities of the vendor. In that case the holder of the notes filed the bill to enforce the lien, and made the administratrix of the vendor and the vendee defendants; all the parties interested were before the court.

The decision in this case was followed and applied in *Carlton v. Sessions et al., ante.*

In *Hutton, Adm'r, el al. v. Moore, Adm'r*, 26 Ark., 396, this court said: "The better opinion is, that when a vendor conveys title without reservation, his lien is an individual equity of no force until decided by a court of equity, and does not pass as a right to an assignee of the notes for the purchase money."

But where the vendor, as in that case, withheld the title, taking notes for the purchase money, showing on their face that they were given for the lands, the lien of the vendor passed to the assignee by assignment of the notes.

In *Sheppard v. Thomas*, 26 Ark., 626, the vendors executed a deed to the vendee for lands, etc., reserving a lien upon the face of the deed for the payment of notes taken for the purchase money, and assigned the notes to Thomas, who filed a bill against the vendee to enforce the lien. A majority of the court held that the lien reserved by the vendors in the face of the deed did not pass to the assignee by the assignment of the notes, and that he could not maintain a bill against the vendee to enforce the lien. This case was followed by a majority of the court in *Jones v. Doss et al.*, 27 Ark., 518.

In both of these cases the views of a minority of the court were expressed in dissenting opinions.

By section 28 of the act of April 21, 1873 (Pamph. Acts of 1873, p. 217), the legislature declared that "the lien or equity held or possessed by the vendor of any real estate, for the sale of the same, shall inure to the benefit of any assignee of the notes or obligations given for the purchase money of such real estate, and such lien or equity shall be assignable and payable by indorsement or otherwise, in the hands of such assignee; and any such assignee may maintain an action or suit to enforce the same, provided the said lien or equity is expressed upon or appears from the face of the deed of conveyance."

In the absence of any clear expressions showing it to have been the intention of the legislature to give this act a retrospective effect, we think it safest to hold that it can only be applied to assignments made after the passage of the act.

The notes in this case having been assigned before the passage of the act, the case must be decided on general principles, but the question involved in the case, and upon which the

court has heretofore, as above indicated, been divided, has been rendered of less practical importance by the passage of the act.

Here, upon the face of the deed, the vendor retained an express lien upon the lands conveyed for the payment of the notes executed by the vendee for the .purchase money. This lien was created by contract of the parties, expressed upon the face of the deed, and put upon the public records. This was not technically a mortgage, but like a mortgage, it was a security for the payment of the debt, as much a security for the payment of the debt as if the vendor had made the deed absolute on its face and taken a mortgage back from the vendee to secure the payment of the notes given by him for the purchase money.

The lien reserved in the face of the deed being, like a mortgage, a security for the debt, I should hold, if the question was *res novo* in this court, as was held by the dissenting judges in the cases above referred to, and as has been held by the circuit court of the United States for this district, and by the supreme courts of several of the states, that the assignees of the notes were entitled to the benefit of the lien by which their payment was secured. *Lincoln v. Purcell et al.*, 2 Head., 151; 3 id., 534; 2 id., 131, and cases cited in dissenting opinions above referred to.

But conceding the law to be, as decided by a majority of the court in the above causes, that the assignment of a note secured by a lien, reserved in the face of a deed, does not transfer the lien to the assignee so as to enable him to maintain a bill, in his own right against the vendee to inforce the lien upon the lands, yet such is not precisely the attitude of this case. But here the holder of one of the notes brings before a court of equity the vendor, as well as the vendee, and the holders of the notes given for the purchase money of the

lands, and asks that the holders of the notes be subrogated to the rights of the vendor, and that the lands be sold, the debts marshaled, and the proceeds distributed ratably among them.

Why should not this be done? The vendee has not paid for the lands; they are bound, upon the face of his deed, for the purchase money, and he should not be permitted to keep them without paying for them. The vendor might have enforced the lien by bill against the vendee and the holders of the notes to protect himself as indorser of the notes, but he has not done so, and may never choose to do so. He may be insolvent and indifferent about the matter. Then, unless this bill can be maintained, though the lands stand charged upon the public records with a lien for the payment of the notes given for the purchase money, no one can enforce this lien even in a court of equity.

And why should a court of equity, with all the parties before it, not decree a sale of the land and give the proceeds to the holders of the notes for the purchase money? Surely the mere technical conclusion that the lien reserved in the deed did not follow the notes into the hands of the assignees is not a good reason why a court of equity, with all the parties before it, should not decree that the purchaser of the lands should pay for them, or the lands be sold for the satisfaction of the debt, and that the money should go to the persons equitably entitled to it.

The decree of the court below must be reversed, and the cause remanded with instructions to the court to overrule the demurrer to the bill, and proceed with the cause, etc.

. BENNETT, J., being disqualified, did not sit in this case.