## OBER *v.* GALLAGHER.

1. In a suit brought by a citizen of Louisiana, in the Circuit Court of the United States for the Eastern District of Arkansas, to enforce a lien on lands situate within that district, one of the defendants, a citizen of Tennessee, was served with process in Arkansas. *Held*, that, under the act of Feb. 28, 1839 (5 Stat. 321), such service brought him within the jurisdiction of the court.

2. A court which has acquired rightful jurisdiction of the parties and subject-matter will retain it for all purposes within the general scope of the equities to be enforced.

3. The holder of a note which is secured by mortgage may proceed at law and in equity at the same time, until he obtains actual satisfaction of the debt.

APPEAL from the Circuit Court of the United States for the Eastern District of Arkansas.

Thompson purchased from Fleming, Jan. 15, 1867, a plantation situated partly in Prairie County and partly in Pulaski County, Ark., at the price of $60,000, to be paid in ten equal instalments, the first March 1, 1867, and the remainder annually thereafter. Notes, negotiable in form, and expressing on their face that their consideration was the purchase of this plantation, were executed by Thompson to Fleming for the several instalments, payable at the times agreed upon. On the same day, the date of the purchase, Fleming and his wife conveyed the property to Thompson by a deed in which, after a recital of the notes for the purchase-money, was the following: " But it is expressly agreed by the parties of the first and second part, that the said parties of the first part shall, and do hereby, retain a lien upon all of said lands for the payment of said ten promissory notes given for the purchase-money, and, when the same are fully paid off, said lien is to stand released and discharged." This deed was recorded in Pulaski County, Feb. 26, 1867. It was also duly recorded in Prairie County.

At the time of the purchase, Thompson was a citizen of Louisiana, and Fleming, of Arkansas. The note falling due March 1, 1867, was paid Jan. 19, 1867; and on March 20, 1867, Fleming transferred all the other notes, by indorsement, to Gallagher, a citizen of Louisiana. Gallagher afterwards sued Thompson in the fifth district court for the parish of Orleans, La., upon the note falling due March 1, 1869, and, June 7,

1869, recovered judgment thereon for $6,000 and interest from March 4, with costs. This judgment he has been unable to collect by execution or otherwise.

At the time of the purchase there was also a judgment in the Prairie County Circuit Court of Arkansas, against Fleming, in favor of one Embry, for $643.43 debt, and $63 damages, which was a lien upon the part of the plantation in Prairie County. An execution was issued upon this judgment April 29, 1867, levied May 14, 1867, on the lands covered by the judgment lien; and they were offered for sale by the sheriff, and struck off, Aug. 19, 1867, to one English, for $844.70. In pursuance of this sale, the sheriff conveyed them to English, Aug. 24, 1867; and, Feb. 29, 1868, English conveyed them to Ober, the appellant, to whom at the same time Thompson also conveyed them.

Gallagher afterwards, being a citizen of Louisiana, filed this bill against Ober, a citizen of Arkansas, and Thompson, then a citizen of Tennessee, in the Circuit Court of the United States for the Eastern District of Arkansas, setting forth the sale from Fleming to Thompson; the execution of the notes by Thompson to Fleming; the reservation of the lien in the deed from Fleming; the indorsement of the note falling due March 1, 1869, by Fleming to Gallagher; the judgment against Thompson thereon in the fifth district court for the parish of Orleans; the judgment of Embry against Fleming; its lien; the sale and conveyance by the sheriff to English; and the conveyance by English to Ober, — substantially as above stated. The bill then alleges, in effect, that the purchase by English at the sheriff's sale was for the use of Thompson; that Thompson paid him the money he advanced to the sheriff; that the conveyance to Ober was for the benefit and at the request of Thompson; and that Ober at the time had full knowledge of all the facts. The prayer is, that the property conveyed by Fleming to Thompson may be subjected, under the lien reserved in the deed, to the payment of the amount due upon the judgment in favor of Gallagher.

At the time of the commencement of this suit, Fleming, as well as Thompson, was a citizen of Tennessee. He was not made a party. Ober and Thompson were both served with process in Arkansas, Thompson having been found there at the

time; and they both demurred to the bill, assigning special cause, as follows : —

"1st, Said bill shows that said Thompson is a non-resident of said district, and not within the jurisdiction of this court.

"2d, Said complainant, as the assignee of the note named in said bill, did not take any lien, nor has he any under and by virtue of the assignment of said note.

"3d, Said bill fails to show that John T. Fleming, the original holder and payee of said note, could have brought suit thereon in this court.

"4th, Said bill fails to show that complainant has exhausted his remedies at law to collect the debt named in said bill.

"5th, The judgment exhibited with said bill rendered in the State of Louisiana merged the note named in the bill; and this court has no jurisdiction to enforce such judgment as a lien against the lands described in the bill, or to enforce it at all, until a judgment is rendered on the same in this court at law.

"6th, Said complainant having elected to sue said Thompson at law, he must abide such election, or show that he has used all remedy under such suit, but to no purpose, which said bill does not show."

This demurrer was overruled. Thompson elected to stand by his demurrer, but Ober answered, insisting that the title of English was superior to that of Fleming, and that he was a *bona fide* purchaser from English, without notice. In this way, he claimed to hold the property in Pulaski County free from the lien reserved by Fleming. As to that in Prairie County, he insisted that the note due March 1, 1867, exceeded in amount the value of this part of the property, and that in equity it should be released from the lien.

After this answer, Gallagher, by consent, amended his bill, by setting up his ownership of the other notes indorsed to him, and asking that "as to any of said notes that may be due at the time of rendering the final decree herein," he might have "the same relief that he hath already in and by his original bill prayed; and that, as to the remainder of said notes, the court may give him such relief as may tend to secure the payment of the same when they respectively fall due, without further litigation or delay." At the time of filing this amend-

ment, it was agreed that the answer of Ober to the original bill should be taken as his answer to the amended bill; that Thompson should have the same benefit from his demurrer to the original bill that he would have if he had demurred to the bill as amended: and the cause was set down for hearing upon bill, amended bill, answer, and replication, with leave to both parties to take depositions.

The Circuit Court rendered a decree, April 24, 1874, finding due to Gallagher, upon his judgment, and upon the notes then past due and unpaid, $49,903; establishing a lien in his favor upon the whole plantation in the hands of Ober, as security for the amount so found to be due; and ordering a sale, and an application of the proceeds to its payment. Further directions were also given in respect to the notes not then due.

From this decree Ober alone appeals.

*Mr. A. H. Garland* for the appellant.

1. The complainant and Thompson were non-residents of the State, and the latter was not within the jurisdiction of the court. When there is a plurality of plaintiffs or defendants, *each one* must possess the requisite character to sue and be sued. The bill must expressly aver this citizenship. Conkling's Treatise, 143 (4th ed.) 343–349; Story's Eq. Pl., sects. 492, 721.

The act of Feb. 28, 1839, does not modify that rule further than to permit the suit to progress against the defendant residing in the State, and to be dismissed against the other. 1 Wheat. 91; 1 Paine, C. C. 410; 3 Cranch, 267.

2. The complainant did not take a special lien, nor has he any under and by virtue of the assignment of said note. 1 Lead. Cas. in Eq. (Hare & Wall.) 367 (3d Am. ed.); *Campbell's Appeal,* 6 Am. Law Reg. 751–765; 2 Wash. Real Prop. 92, sect. 18 (3d ed.); *Shall* v. *Biscoe,* 18 Ark. 142; *In re Brooks,* 2 Bk. Reg. 149; 2 Story, Eq. Jur. 1039, 1040, 1057; Story, Eq. Pl. 118, 134, 153, 158; 4 Rand. (Va.) 447; 1 Eq. Cas. Ab. 93; 6 B. Mon. (Ky.) 393; 7 Cranch, 94; 1 Johns. Ch. 119; 10 Johns. 65; 18 id. 402; 2 Johns. Ch. 418; 1 Paige, 329; 10 Ves. 411; 11 id. 13; 2 Story, sect. 1250; 11 Ohio, 21; 5 Cranch, 322; 2 Spence, Eq. Jur. 850–852; 12 Wheat. 594.

3. The bill fails to show that Fleming, the original holder

and payee of said note, could have brought suit thereon in the court below. *Sheldon* v. *Sill*, 8 How. 441; Conkling's Treatise, 109, 133; 4 Cranch, 46; 16 Pet. 315; 2 How. 241; 13 id. 183; 8 Wall. 393.

4. The bill fails to show that complainant has exhausted his remedies at law to collect the debt named therein. *Livingston* v. *Van Ingen*, 1 Paine, 45; *Loman* v. *Clarke*, 2 McLean, 568; *Toby* v. *County of Bristol*, 3 Story, 800; *Bennett* v. *Butterworth*, 11 How. 669; *Jones* v. *McMasters*, 20 id. 9; 4 Dall. 5; 1 Pet. 232; 3 id. 210; 15 How. 299; 2 Black, 245; 2 Curt. 592; Baldw. C. C. 394; 5 McLean, 337; *Mex* v. *Autbury*, 6 Eng. (11 Ark.) 411; *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144; *Apperson* v. *Ford*, 23 Ark. 746; Story, Eq. Pl., sect. 257 *a;* 1 Clarke (Iowa), 98, 148; *Carter* v. *Bennett*, 6 Fla. 214; *Scott* v. *McFarland*, 34 Miss. (5 George), 363.

5. The judgment rendered in Louisiana merged the note; and the court below had no jurisdiction to enforce such judgment as a lien against the lands, or to enforce it at all, until a judgment should be rendered thereon in Arkansas. *Green* v. *Sarmiento*, Pet. C. C. 74; 3 W. C. C. 17; *Postlewaite* v. *Howe*, 3 Clarke (Iowa), 365; *Besby* v. *Palmer*, 1 Hill (N. J.), 482; *Jones* v. *Jamison*, 15 La. Ann. 35; *Kittredge* v. *Stephens*, 16 Cal. 381; *Temple* v. *Scott*, 3 Minn. 419 *et seq.;* Freeman on Judgments, 215–221; Story, Confl. Laws, 584–603, 609 *a;* Bright. Dig. p. 499, sect. 188; *Carter* v. *Bennett, supra;* 1 Rob. Pr. 194–288; 16 Pet. 26; 1 McLean, 167; 6 Pet. 389; 34 Miss. 708; *Bean* v. *Smith et al.*, 2 Mason, C. C. 252; *Shields* v. *Thomas*, 18 How. 253; Conkling's Treatise, 272; 2 Story, 598; 3 Sumn. 425–429; 2 id. 589; 20 How. 591; Bright. Dig. 291.

6. The complainant, having elected to sue Thompson at law, must abide by such election, or show that he has used all remedy under such suit, but to no purpose. 24 Ark. 410; Mitf. Pl. 10, note 1 *et seq.;* Wigram's Discov. 54, note 4; id. 67.

*Mr. W. M. Rose*, for the appellee.

MR. CHIEF JUSTICE WAITE stated the case, and delivered the opinion of the court.

No errors have been assigned either upon the record or in the briefs of counsel, as required by our Rule 21. For this

reason, we might very properly affirm the decree without look-
ing into the record; but, as the case has been submitted and
briefs filed on both sides, we will, without making this a prece-
dent to justify such neglect of this salutary rule in the future,
proceed to the consideration of the points suggested by the
counsel for the appellant in opposition to the decree.

1. It is insisted, that as Thompson was, at the time of the
commencement of the suit, a citizen of Tennessee, and a neces-
sary party, the court could not take jurisdiction of the cause;
and in support of this objection, it is said, that, where there is
a plurality of plaintiffs or defendants, *each one* must have the
requisite character of citizenship to sue and be sued.

The question here presented cannot be one of practical
importance in the future, as the act of March 3, 1875 (18 Stat.
470, sect. 1), has extended the jurisdiction of the circuit courts
to controversies "between citizens of different States," using
for that purpose the very words of the Constitution (art. 3,
sect. 2), and thus avoiding the embarrassments that frequently
arose under the act of 1789 (1 Stat. 78, sect. 11), which lim-
ited their authority to controversies between "a citizen of the
State where the suit is brought and a citizen of another State."
It is, therefore, sufficient to say, that, since the act of Feb. 28,
1839 (5 Stat. 321, sect. 1), it has never been doubted that the
circuit courts had jurisdiction of a suit in equity of a local
nature, where a citizen of one State prosecuted citizens of other
States, in a district where the property in controversy was sit-
uated, and of which one of the defendants was an inhabitant.
If all the defendants were served with process in the district,
or voluntarily appeared in the suit, the decree when passed
would bind all. But if they were not served, or did not appear,
and they were not indispensable parties, the case might pro-
ceed without them, and their interests would not be affected by
what was done in their absence. If, however, an indispensable
party was a citizen of the same State with the plaintiff, the
jurisdiction would be defeated; because the controversy would
not be between citizens of different States, and thus not within
the judicial power of the United States as defined by the Consti-
tution. The decisions to this effect are numerous. *Hagan* v.
*Walker*, 14 How. 36; *Shields* v. *Barrow*, 17 id. 141; *Clear-*

*water* v. *Meredith*, 21 id. 492; *Inbusch* v. *Farwell*, 1 Black, 571; *Barnes* v. *Baltimore City*, 6 Wall. 286; *Jones* v. *Andrews*, 10 id. 332; *Commercial & R. R. Bank of Vicksburg* v. *Slocomb*, 14 Pet. 65. In *Louisville Railroad Company* v. *Litson*, 2 How. 497, it is also distinctly stated (p. 556), that the act of 1839 "was passed exclusively with an intent to rid the courts of the decision in the case of *Strawbridge* v. *Curtis*," 3 Cranch, 267, which, with that of *The Bank* v. *Deveaux*, 5 Cranch, 84, had "never been satisfactory to the bar." p. 555.

Here, Gallagher could sue both Thompson and Ober separately in the courts of the United States, and they could each sue him. The suit is of a local nature, its object being to subject lands in Arkansas to the payment of a debt. It must, therefore, be brought in the district where the property is situated. Ober is a citizen of that State, and is the principal defendant. The relief demanded consists in bringing his property to sale, to pay a debt charged upon it. As to him, the court confessedly had jurisdiction. Thompson, though a citizen of Tennessee, was served with process in Arkansas; and this, under the provisions of the act of 1839, brought him into the case, and within the jurisdiction of the court.

2. As Fleming, the payee of the notes secured by the lien, was, when the suit was commenced, a citizen of Tennessee, and, consequently, incompetent to sue Thompson, also a citizen of that State, in the courts of the United States, it is claimed that Gallagher cannot maintain this suit.

This objection is also based upon a clause in sect. 11 of the Judiciary Act of 1789, repealed by the act of March 3, 1875, which provides that no circuit court shall have cognizance of any suit to recover the contents of a promissory note in favor of an assignee, unless a suit might have been prosecuted in such court to recover such contents if no assignment had been made. Under this act, it was held, in *Sheldon* v. *Sill*, 8 How. 441, that an indorsee of a negotiable promissory note, secured to the payee by a mortgage, could not sue in the courts of the United States to foreclose the mortgage, unless the mortgagee could. Gallagher did not sue in this case originally as the indorsee of a note, but as the owner of a judgment of record in his own favor, secured by a lien which he asked to have

enforced. The note was no longer in existence as an outstanding liability. It had been merged in the judgment, and was, as a note, extinguished. Gallagher no longer claims as the assignee of the note, but as the owner of a judgment in his favor against Thompson. He can sue Thompson upon the judgment in the courts of the United States in Tennessee. As was well said by Mr. Justice Story, in *Bean v. Smith*, 2 Mass. 269, " It is no objection to the jurisdiction, that at some anterior period the transaction assumed a shape not within the reach of that jurisdiction. It is sufficient, if it has now become so modified by the act of the parties, or by the principles of law, that jurisdiction now rightfully attaches." Thompson is no longer a debtor by note to Fleming, but by judgment to Gallagher. In the collection of the judgment, Gallagher does not sue or proceed upon the note and its assignment, but upon the judgment.

The court had, therefore, jurisdiction of the suit as originally brought; and this jurisdiction was not defeated by the amendment which introduced the notes, not in judgment, but secured by the lien, into the case. Having obtained rightful jurisdiction of the parties and the subject-matter of the action for one purpose, the court will make its jurisdiction effectual for complete relief. Story's Eq. 64 *k*. If the amendment had not been made, the court would in its decree have taken care to protect the rights of the holders of the outstanding notes; and that is all it is called upon to do by the amendment. Having jurisdiction for one purpose, it may be retained for all within the general scope of the equities to be enforced.

3. Another objection urged is, that the assignment of the notes by Fleming did not transfer the lien he had reserved as security for their payment. It is undoubtedly true, that, in many of the States, the implied lien which equity raises in favor of the vendor of real property to secure the payment of the purchase-money does not pass by an assignment of the debt; but here the lien was not left to implication: it was expressly reserved. In fact, it is more than a lien. In equity, it is a mortgage, so made by express contract. The acceptance by Thompson of the deed containing the reservation amounts to an express agreement on his part that the land should be

held as security for the payment of what he owed on account of the purchase-money. This created an equitable mortgage; and such a security passes by an assignment of the debt it secures. We so held in *Batesville Institute* v. *Kauffman*, 18 Wall. 154, a case which also came from the Eastern District of Arkansas.

It is claimed, however, that the law of Arkansas is different, and that the Supreme Court of that State has decided that a lien to secure the payment of purchase-money, expressly reserved by the vendor in his deed, does not pass by an assignment of the debt. If such was the settled rule of law in the State when the notes which are under consideration in this case were assigned, we should be compelled to recognize it as a rule of property there, and be governed accordingly. *Suydam* v. *Williamson*, 24 How. 434. But we do not understand such to have been the fact. The first case in which this ruling was made was *Sheppard* v. *Thomas*, 26 Ark. 617, decided at the June Term, 1871, by a divided court, two out of the five judges dissenting. This case was followed also by a divided court in *Jones* v. *Doss*, 27 Ark. 518, decided at the December Term, 1872; but almost immediately thereafter, April 24, 1873, the legislature provided by statute as follows:—

"The lien or equity held or possessed by the vendor of any real estate, for the sale of the same, shall inure to the benefit of any assignee of the notes or obligations given for the purchase-money of such real estate, and such lien or equity shall be assignable, and payable by indorsement or otherwise in the hands of such assignee, and any such assignee may maintain an action or suit to enforce the same: *Provided*, the said lien or equity is expressed upon or appears from the face of the deed of conveyance." Pamphlet Laws, 1873, p. 217, sect. 28.

This legislation was followed, at the December Term, 1873, by the case of *Campbell* v. *Rankin*, 28 Ark. 401, in which it was strongly intimated, that, if it were necessary, the previous cases in which this question was decided would be overruled. Under these circumstances, we are not satisfied that, when these notes were assigned, it was a settled rule of property in Arkansas that a lien for purchase-money, expressly reserved, would not pass by an assignment of the debt. Such being the case,

the Circuit Court was right in following our decision in *Batesville Institute* v. *Kauffman*, especially as its decision was not made until after the doubts expressed in *Campbell* v. *Rankin*, as to the correctness of the rulings in the previous cases.

4. It is finally insisted that Gallagher must exhaust his remedies at law before he can come into a court of equity to subject the land. This is not a creditor's bill to reach equitable assets. There is no attempt to enforce the judgment as a judgment, but to reach securities held for the debt. The suit is in reality one to enforce a mortgage given to secure a note, but not commenced until after the note had gone into judgment at law. The note was merged in the judgment: but the lien which secured it was not; that was simply transferred from the note to the judgment.

An election to sue at law upon a note secured by mortgage does not make it necessary for the holder to exhaust his remedies in that forum before he can go into equity to enforce his mortgage. He may proceed at law and in equity at the same time, and until actual satisfaction of the debt has been obtained.

This disposes of all the questions presented in the demurrer, and brings us to a consideration of the case upon its facts. Without going into the details of the evidence, it is sufficient to say, that we are entirely satisfied that English purchased the property in Pulaski County at the sheriff's sale, for the benefit of Thompson; that Thompson either furnished him the money to pay the sheriff, or repaid him what he may have advanced within a short time thereafter; that the sale to Ober was made by Thompson to pay or secure a debt he owed; that English conveyed to Ober at the request of Thompson, and to give effect to the arrangement he had made; that Ober, at the time of his purchase, had full knowledge of all the facts, and that he took the title to the property incumbered by the lien reserved in the deed from Fleming.

It follows that the decree of the Circuit Court was right, and it is, therefore,                                   *Affirmed.*