## SOUTHERN PAC. R. CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 19, 1904.)

### No. 956.

1. EQUITY—OBJECTIONS TO JURISDICTION—WAIVER.

Where a bill presents a case in which it is competent for a court of equity to grant the relief sought, and it has jurisdiction of the subject-matter, an objection to the jurisdiction in equity on the ground that there is an adequate remedy at law must be taken by plea, demurrer, or answer at the earliest opportunity, and if not so taken it will be considered as waived.

2. SAME—JURISDICTION—ADEQUATE REMEDY AT LAW.

A court of equity has jurisdiction of a suit by the United States against a railroad company, its mortgagees, and others to ascertain and determine what portion of lands erroneously patented to the company under a grant have been sold to bona fide purchasers, the rights of other purchasers holding under executory contracts to obtain a confirmation of the titles of such bona fide purchasers, and for the cancellation of the patents to the lands which have not been so disposed of, and an accounting from the company for moneys received for lands sold, in accordance with the provisions of Acts March 3, 1887, c. 376, 24 Stat. 556 [U.

¶ 1. See Equity, vol. 19, Cent. Dig. §§ 173–176.

S. Comp. St. 1901, p. 1595], and March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603], such court being the only one which can furnish a plain, complete, and adequate remedy which will reach the ends of justice with reference to all the parties and issues.

3. PUBLIC LANDS—LAND ERRONEOUSLY PATENTED UNDER RAILROAD GRANT—STATUTE AUTHORIZING RECOVERY OF PRICE.

The provisions of Act March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603], for the bringing of suits against railroad companies to recover the minimum government price of lands erroneously patented to such companies under grants, and which they have sold to bona fide purchasers, are not invalid as creating an indebtedness by a retrospective act, nor as condemning the companies to pay a debt without a hearing, the debt having been created when a company sold land to which it had no right and which was patented to it through mistake, and a recovery being dependent on proof of such facts in the suit.

4. RES JUDICATA—SPLITTING CAUSE OF ACTION—DISMISSAL WITHOUT PREJUDICE.

A suit by the United States against a railroad company for the cancellation of patents to lands erroneously issued to defendant, dismissed without prejudice as to certain of the lands which defendant alleged that it had sold to bona fide purchasers, is not a bar to a second suit against the company and such purchasers for an adjudication of their rights and title, and a recovery from the company of the price of the land if it shall be found that they were bona fide purchasers.

Appeal from the Circuit Court of the United States for the Southern District of California.

For opinion below, see 117 Fed. 544.

This is a bill in equity, brought by the United States against the Southern Pacific Railroad Company and the trustees in certain mortgages, to secure bonds issued by said company, and against numerous other defendants to determine the title to over 30,000 acres of land situate within the limits of the grant to the Southern Pacific Railroad by the act of March 3, 1871, c. 109, 16 Stat. 473, which were excepted from such grant by reason of a prior grant to and reservation for the Atlantic & Pacific Railroad Company by the act of July 27, 1866, c. 278, 14 Stat. 299; to ascertain and determine what portion of the lands have been sold by the Southern Pacific Company to bona fide purchasers; to obtain a confirmation of the title to such lands as are in the hands of bona fide purchasers; for the cancellation of patents of such lands as are still owned by the company; and for an accounting for the moneys received by the Southern Pacific Railroad Company, for such lands as it has sold to bona fide purchasers, to the extent of $1.25 per acre, in accordance with the provisions of the acts of Congress of March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595], and March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603]. The averments in the bill are quite lengthy. A synopsis thereof is contained in the decision of the Circuit Court, to which reference is here made. United States v. Southern Pacific Railroad Co. (C. C.) 117 Fed. 544–550. The final decree entered by the court, from which the appeal herein is taken, is divided into eight subdivisions.

In subdivision 2 "the court finds and determines that all the lands described in this subdivision are within the limits of the grant made unto the Atlantic & Pacific Railroad Company by act of Congress approved on July 27, 1866, c. 278, 14 Stat. 299, as established by the map of definite location filed by that company in the General Land Office during the year 1872, which grant was forfeited unto the United States by act of Congress approved on July 6, 1886, c. 637, 24 Stat. 123; that none of the said lands are situated within the limits, primary or indemnity, of the grant made unto the Southern Pacific Railroad Company by section 18 of the said act of Congress of July 27, 1866, c. 278, 14 Stat. 299; that in former litigations between the United States and the said Southern Pacific Railroad Company it was finally and conclusively adjudged and determined, as between the United States and any

claim to said lands by said company by virtue of the act of Congress of March 3, 1871, c. 109, 16 Stat. 473, that such lands became, upon the passage of the forfeiture act of July 6, 1886, c. 637, 24 Stat. 123, the property of the United States, and by force of that act were restored to the public domain, without the Southern Pacific Railroad Company having acquired any interest therein that affected the power of the United States to forfeit and restore them to the public domain; that all of the said lands have been erroneously patented by the United States unto the said Southern Pacific Railroad Company; that the said Southern Pacific Railroad Company sold all of the said lands to bona fide purchasers thereof, at purchase prices paid, in each instance, equal to or in excess of one dollar and twenty-five cents per acre; that the title of each of such purchasers to the lands of their respective purchases, as set forth in the several items of this subdivision (148 in number), was confirmed unto such purchasers by acts of Congress approved on March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595], and March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603]; and that the defendant Southern Pacific Railroad Company is indebted to the United States for all of the said land so sold at the rate of one dollar and twenty-five cents per acre, with interest at six per cent. per annum from and after the date of this decree." It then separately adjudges and decrees a confirmation of the title of the purchasers coming under this subdivision.

In subdivision 3 the lands are all situated the same as in subdivision 2, and were sold to bona fide purchasers thereof at the prices set forth in the several items of this subdivision (5 in number), "each of such sales being for a price less than one dollar and twenty-five cents per acre; and that the defendant Southern Pacific Railroad Company is indebted to the United States for the several sums of money received from the said purchasers, as in the items of this subdivision set forth." And then enters a separate decree confirming the title to such purchasers upon payment by them to the United States of a specified sum of money, being the difference between the amount paid to the railroad company and $1.25 per acre.

Subdivision 5 finds and determines the facts with reference to certain lands which are situated within the indemnity limits of the grant to the Atlantic & Pacific Railroad Company of July 27, 1866, c. 278, 14 Stat. 299: "That the lands in the conflicting limits of the grant to the Atlantic & Pacific Railroad Company and to the Southern Pacific Railroad Company, made by the act of Congress of July 27, 1866, c. 278, 14 Stat. 299, are in process of being partitioned, and said grants are in process of adjustment and settlement in the Department of the Interior. 183 U. S. 519, 534, 535, 22 Sup. Ct. 154, 46 L. Ed. 307." In this subdivision it is "ordered, adjudged and decreed that the bill of complaint for the said lands, and for the value thereof, be and hereby is dismissed without prejudice to any further suit or action against the defendant Southern Pacific Railroad Company, D. O. Mills, and Homer S. King as trustees, and Central Trust Company as trustee," to certain fractional sections thereof, and confirms the title to certain other parties therein named.

In subdivision 6 "the court finds and determines that the following described lands are covered by patents issued by the United States otherwise than under or by virtue of any land grant made unto the Southern Pacific Railroad Company, and as to such lands it is ordered, adjudged, and decreed that the bill of complainant herein is hereby dismissed without prejudice," and specifies the sections, or fractional sections, of land coming under this head.

In subdivision 7 "it is further ordered, adjudged, and decreed that the defendants Southern Pacific Railroad Company, Homer S. King as trustee, and Central Trust Company as trustee, have no title, estate, or interest" in certain lands therein mentioned.

In subdivision 8 "the court finds and determines that the defendant Southern Pacific Railroad Company is indebted to the United States in the sum of thirty-three thousand one hundred and ninety-two dollars and seventy-nine cents ($33,192.79) for twenty-six thousand five hundred and fifty-four and twenty-three hundredths (26,554.23) acres of land, at one dollar and twenty-five cents ($1.25) per acre, erroneously patented by the United States unto the said company, and by it sold to bona fide purchasers from whom it has received in payment therefor, in each instance, a sum equal to or in excess

of one dollar and twenty-five cents ($1.25) per acre; together with the sum of four hundred and four dollars and thirteen cents ($404.13) received by the said company from the land sales made at less than one dollar and twenty-five cents ($1.25) per acre, set forth in subdivisions 3 and 4 hereof; in all, the sum of thirty-three thousand five hundred and ninety-six dollars and ninety-two cents ($33,596.92);" and entered a decree for the recovery of said sum.

The several acts of Congress referred to in the bill of complaint, and mentioned in the decree in relation to the lands granted to appellant, the forfeiture thereof, and the rights of the government therein, form a material and necessary part of the history of the facts leading up to the present case. It is deemed unnecessary to repeat these facts. The questions in relation thereto have all been settled and determined by the courts. A reference to some of the decisions is all that need be given to complete the history as to such facts. See United States v. Southern Pacific Railroad Co. (C. C.) 86 Fed. 962; Id., 98 Fed. 27, 45, 38 C. C. A. 619, 637; Id., 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091; Southern Pac. R. Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; United States v. Southern Pac. R. Co., 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307; Southern Pac. R. Co. v. United States, 189 U. S. 447, 23 Sup. Ct. 567, 47 L. Ed. 896.

Wm. Singer, Jr. (Wm. F. Herrin, of counsel), for appellant.
Joseph H. Call, Sp. U. S. Atty.

Before GILBERT and MORROW, Circuit Judges, and HAW-LEY, District Judge.

HAWLEY, District Judge (after making the foregoing statement). The points of contention specified by appellant in its brief are three:

"(1) The case proved shows no ground of equity jurisdiction.
"(2) The case proved shows no cause of action at law, and herein the court erred in rendering any judgment for money in favor of complainant.
"(3) The splitting of demands by voluntary dismissal of part thereof from suit No. 600 is a bar to this suit, and all other issues here are res judicata by decrees in the other former suits set forth in the bill of complaint."

The broad contention of appellant is that the suit is simply an action at law to recover money for the lands sold by appellant; that "the amount is only a question of arithmetic," to be ascertained by multiplying the number of acres sold at so much per acre; that the suit is in substance an action of debt or assumpsit, for money had and received, in the form of a suit in equity; that the averments in the bill as to determining who are bona fide purchasers, the quieting of titles, and annulling of patents, are simply suggested in order to give color of right to sue in equity; that, as to the lands sold by the railroad company to bona fide purchasers, "there were no titles to confirm nor patents to annul," and, as no grounds for equitable relief are stated in the bill of complaint, it should be dismissed. The grounds upon which this contention is sought to be maintained are varied and extensive, and require a careful and painstaking examination of the statutes mentioned in the bill and decree, and of numerous authorities cited by the respective counsel.

Appellant filed its answer to the merits of the bill, without any demurrer, plea, or other objection to the jurisdiction in equity. The government was therefore put to the expense of taking the

testimony, and the cause was submitted to the court and tried upon its merits. The first objection to the jurisdiction of the court upon this ground was made in the argument of counsel for appellant at the hearing. It is claimed by appellee, upon these facts, that appellant waived any right to object to the final determination of this cause as one in equity, the court having power to grant the relief sought by the bill, and the court below so held. Upon this point counsel for appellant claims that the court erred; that the true rule is that where the plaintiff, upon the face of his bill, shows he has a plain, adequate, and complete remedy at law, and no other equitable relief is prayed for, it is not necessary that an objection to the jurisdiction in equity should be taken in limine in the answer; that it need not be made by demurrer or plea; that if taken at the hearing it is sufficient; and, if it clearly exists, it is the duty of the court, sua sponte, to recognize it and give it effect. The following authorities, among others, are cited in support of this rule: Mills v. Knapp (C. C.) 39 Fed. 592; Hoey v. Coleman (C. C.) 46 Fed. 221; Oelrichs v. Spain, 15 Wall. 211, 227, 21 L. Ed. 43; Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Killian v. Ebbinghaus, 110 U. S. 573, 4 Sup. Ct. 232, 28 L. Ed. 246; Litchfield v. Ballou, 114 U. S. 192, 5 Sup. Ct. 820, 29 L. Ed. 132; Jones v. Bradshaw, 16 Grat. 361; Green v. Massie, 21 Grat. 362; Buffalo v. Town, etc., 85 Va. 222, 7 S. E. 238.

The principle, as applied to the particular facts in these cases, may, for the purposes of this opinion, be admitted to be true. We have had frequent occasion, notably in German Savings & Loan Society v. Dormitzer, 116 Fed. 471, 472, 53 C. C. A. 639, and Utah-Nevada Company v. De Lamar (recently decided; C. C. A.) 133 Fed. 113, to call attention to the fact that the language as used by the courts in their opinions must be read and construed in connection with the facts of the case about which the court is speaking.

Most of the cases relied upon by appellant did not present a case where it was competent for a court of equity to grant the relief asked for, while in the case at bar the averments in the bill clearly show that it is competent for a court of equity to grant the relief asked for. This distinction must not be overlooked by the courts. In the latter line of cases it is held that failure to object to the jurisdiction in equity must be taken by plea, demurrer, or answer at the earliest opportunity, and, if not so made, it will be considered as having been waived.

In Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 596, 32 L. Ed. 1005, the court said:

"The point is also pressed that the remedy at law was plain, adequate, and complete, and jurisdiction in equity therefore wanting. * * * The defendants fully answered the bill, and raised no such objection, and, the cause being at issue and evidence taken, it was ordered on the 23d of February, 1883, by consent, to be heard by the General Term in the first instance. On the 24th of March, 1884, the defendant moved to dismiss on the ground of the adequacy of the remedy at law. We have had occasion recently to remark that where it is competent for the court to grant the relief sought, and it has jurisdiction of the subject-matter, this objection should be taken at the earliest opportunity, and before the defendants enter upon a full defense. Reynes v. Dumont, 130 U. S. 354 [9 Sup. Ct. 486, 32 L. Ed. 934]."

In Brown v. Lake Superior Iron Co., 134 U. S. 530, 535, 10 Sup. Ct. 604, 606, 33 L. Ed. 1021, the court said:

"Good faith and early assertion of rights are as essential on the part of the defendant as of the complainant. This matter has recently been before this court in Reynes v. Dumont, 130 U. S. 354, 395 [9 Sup. Ct. 486, 497, 32 L. Ed. 934], and was carefully considered, and the rule, with its limitations, thus stated: 'The rule as stated in 1 Daniell's Ch. Prac. 555 (4th Am. Ed.), is that if the objection of want of jurisdiction in equity is not taken in proper time, namely, before the defendant enters into his defense at large, the court having the general jurisdiction will exercise it;' and, in a note on page 550, many cases are cited to establish that, 'if a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. This objection should be taken at the earliest opportunity. The above rule must be taken with the qualification that it is competent for the court to grant the relief sought, and that it has jurisdiction of the subject-matter.' "

See, also, Insley v. United States, 150 U. S. 512, 515, 14 Sup. Ct. 158, 37 L. Ed. 1163; Perego v. Dodge, 163 U. S. 160, 164, 16 Sup. Ct. 971, 41 L. Ed. 113; Williamson v. Monroe (C. C.) 101 Fed. 322, 329.

This conclusion, of itself, is a sufficient answer to appellant's contention that the complainant's cause of action is simply an individual common-law demand for the value of so many acres of land. But if appellant could now raise the question, it could not, in our opinion, be sustained.

The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances. The circumstances of each case must determine the application of the rule.

In Boyce v. Grundy, 28 U. S. (3 Pet.) 210, 215, 7 L. Ed. 655, the court said:

"It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

In Oelrichs v. Spain, supra, relied upon by appellant, the court said:

"The sixteenth section of the judiciary act of 1789, c. 20, 1 Stat. 82 [U. S. Comp. St. 1901, p. 723], provides 'that suits in equity shall not be sustained in any case where plain, adequate, and complete remedy can be had at law'; but this is merely declaratory of the pre-existing rule, and does not apply where the remedy is not 'plain, adequate, and complete'; or, in other words, 'where it is not as practical and efficient to the ends of justice and to its prompt administration as the remedy in equity.' Where the remedy at law is of this character, the party seeking redress must pursue it. In such cases the adverse party has a constitutional right to a trial of the issues of fact by a jury. But this principle has no application to the case before us. Upon looking into the record it is clear to our minds, not only that the remedy at law would not be as effectual as the remedy in equity, but we do not see that there is any effectual remedy at all at law. * * * The direct proceeding in equity will save time, expense, and a multiplicity of suits, and settle finally the rights of all concerned in one litigation."

Kilbourn v. Sunderland, supra; Joy v. St. Louis, 138 U. S. 1, 49, 11 Sup. Ct. 243, 34 L. Ed. 843; United States v. Union Pacific Ry.,

160 U. S. 1, 51, 16 Sup. Ct. 190, 40 L. Ed. 319; Walla Walla v. Walla Walla W. C., 172 U. S. 1, 12, 19 Sup. Ct. 77, 43 L. Ed. 341.

In carrying out these principles, the courts have held that, where a court of equity is authorized to take jurisdiction over a cause for any purpose, it may retain the cause for all purposes within the scope of the equities to be enforced, and proceed to a final determination of all the matters at issue therein. May v. Le Claire, 11 Wall. 217, 236, 20 L. Ed. 50; Ober v. Gallagher, 93 U. S. 199, 23 L. Ed. 829; Ward v. Todd, 103 U. S. 327, 329, 26 L. Ed. 339; Hopkins v. Grimshaw, 165 U. S. 342, 358, 17 Sup. Ct. 401, 41 L. Ed. 739; Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 275, 53 C. C. A. 551; Douglas Co. v. Tennessee Lumber Mfg. Co., 118 Fed. 438, 55 C. C. A. 254; 1 Pomeroy's Eq. Jur. § 181; Lynch v. Railway Co., 129 N. Y. 274, 280, 29 N. E. 315, 15 L. R. A. 287, 26 Am. St. Rep. 523; Whitehead v. Sweet, 126 Cal. 67, 75, 76, 58 Pac. 376.

That the bill upon its face presents sufficient averments of fact to authorize equitable interposition and relief cannot be questioned. Appellant virtually concedes this. But it argues that, when probed to the bottom, it will be found that all the so-called grounds of equitable relief have been settled and disposed of either by the mutual agreements of the railroad company and the government, or by the express provisions of the act of Congress of March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603], and that the sole question really involved herein is simply a money demand on the part of the government against the railroad company; that the other parties named as defendants have no interest in the litigation, their rights having been previously settled, either by prior litigation or the acts of Congress; and hence that it legally follows that all the equitable allegations of the bill could not have been woven into the complaint for any other purpose than that of giving color of right to sue in equity, a proceeding which, it is claimed, has not received the sanction of the courts, and is wholly inadmissible.

The authorities cited and relied upon by appellant upon this branch of the case are substantially to the effect that, as was stated by the court in Buzard v. Houston, 119 U. S. 347, 352, 7 Sup. Ct. 249, 252, 30 L. Ed. 451:

"In cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort or for money had and received. Parkersburg v. Brown, 106 U. S. 487, 500 [1 Sup. Ct. 442, 27 L. Ed. 238]; Ambler v. Choteau, 107 U. S. 586 [1 Sup. Ct. 556, 27 L. Ed. 322]; Litchfield v. Ballou, 114 U. S. 190 [5 Sup. Ct. 820, 29 L. Ed. 132]."

In that case the court expressly recognized the rule, which we have before stated, that a suit in equity to enforce a legal right can be brought when such court can give more complete and effectual relief in kind or degree on the equity side than on the common-law side.

In Parkersburg v. Brown, supra, the bill as filed asked for equitable relief, and sought to charge the city as a trustee, and to reach

the property covered by the deed of trust. The relief granted by the decree was a simple money judgment against the city for the interest due on the bonds at the date of the decree, based on the legal liability of the city to pay the bonds and coupons, and the court said:

"For this there was a plain, adequate, and complete remedy at law in each bondholder, if the city was thus liable. So that the decree made could not be sustained in any event."

This character of cases has no special application to a case like the present.

In Ambler v. Choteau, supra, the only point decided was to the effect that where the object of a suit in chancery is the recovery of the damages which the complainant alleges he has sustained by reason of an unlawful and fraudulent conspiracy to cheat him out of his interest in an original invention, which is the subject-matter of the controversy, the bill should be dismissed, as his remedy is at law.

In Litchfield v. Ballou, supra, it was held that a bill in chancery which sets forth facts that would support an action at law for money had and received fails for want of equity jurisdiction.

In Scott v. Neely, 140 U. S. 106, 110, 11 Sup. Ct. 712, 714, 35 L. Ed. 358, the court said:

"All actions which seek to recover specific property, real or personal, with or without damages for its detention, or a money judgment for breach of a simple contract, or as damages for injury to person or property, are legal actions, and can be brought in the federal courts only on their law side."

These cases illustrate the grounds upon which appellant relies to sustain its contention. They, in our opinion, fall short of lending any aid or comfort in that direction. The facts in the cases are readily distinguishable from the case at bar.

It may be that the United States could have maintained an action at law for the amount of money found to be due from appellant on the familiar and well-recognized principle announced in Gaines v. Miller, 111 U. S. 395, 397, 4 Sup. Ct. 426, 28 L. Ed. 466, and other authorities cited by appellant, that whenever a person or corporation has received money to which in equity and good conscience another is entitled, the law creates a promise by the former to pay the latter, and the obligation may be enforced in assumpsit for money had and received, if that is the only question involved in the action. The suit in hand is, however, of a different character. It is true that one of the objects of the suit was to obtain a judgment and decree against appellant for the amount of money claimed to be due the United States, but it also involved the necessity of ascertaining and establishing the rights of the bona fide purchasers of certain of the lands, the rights of other parties to whom land had been sold by appellant to purchasers under executory contracts that had not been fully executed, and the rights of certain bondholders claiming an interest in some of the lands included in the grant to appellant. It did not appear upon the hearing that the averments in the bill of complaint concerning these matters were false or did not exist, nor did the complainant obtain

any relief by the decree which the court was not authorized, upon the showing made, to grant.

We are of opinion that the government had the right to bring a suit which would settle all these matters, and prevent any further litigation upon any of the questions involved herein. The amount of money, if any, due from appellant, could be ascertained by a full consideration of all these matters, and some of the questions raised and determined could not be reached and determined in a court of law. The same considerations which invoke the jurisdiction may control the remedy. A court of equity, with its flexible procedure and far-reaching powers, could alone furnish a full, complete, and adequate remedy, to which the government was entitled, by so molding and applying the remedy as to reach the ends of justice with reference to all the parties and all the issues raised by the bill.

In 1 Story's Eq. Jur. (12th Ed.) § 33, the author said:

"Perhaps the most general, if not the most precise, description of a court of equity, in the English and American sense, is that it has jurisdiction in cases of rights, recognized and protected by the municipal jurisprudence, where a plain, adequate, and complete remedy cannot be had in the courts of common law. The remedy must be plain; for, if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for, if at law it falls short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in future; otherwise equity will interfere and give such relief and aid as the exigency of the particular case may require. The jurisdiction of a court of equity is therefore sometimes concurrent with the jurisdiction of a court of law, it is sometimes exclusive of it, and it is sometimes auxiliary to it."

The act of Congress of March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603], limiting the time in which suits for the cancellation of patents may be brought, provides that in certain specified cases no suits need be brought for the cancellation of patents, nor for the confirmation of the title held by bona fide purchasers. In section 2 it is provided:

"That if any person claiming to be a bona fide purchaser of any lands erroneously patented or certified shall present his claim to the Secretary of the Interior prior to the institution of a suit to cancel a patent or certification, and if it shall appear that he is a bona fide purchaser, the Secretary of the Interior shall request that suit be brought in such case against the patentee, or the corporation, company, person, or association of persons for whose benefit the certification was made, for the value of said land, which in no case shall be more than the minimum government price thereof, and the title of such claimant shall stand confirmed."

It then further provides that:

"An adverse decision by the Secretary of the Interior on the bona fides of such claimant shall not be conclusive of his rights, and if such claimant, or one claiming to be a bona fide purchaser, but who has not submitted his claim to the Secretary of the Interior, is made a party to such suit, and if found by the court to be a bona fide purchaser, the court shall decree a confirmation of the title, and shall render a decree in behalf of the United States against the patentee, corporation, company, person, or association of persons for whose benefit the certification was made for the value of the land as hereinbefore provided. Any bona fide purchaser of lands patented or cer-

tified to a railroad company, and who is not made a party to such suit, and who has not submitted his claim to the Secretary of the Interior, may establish his right as such bona fide purchaser in any United States court having jurisdiction of the subject-matter."

Then in section 3, after specifying several conditions, it provides:

"If it shall appear that such person or corporation is a bona fide purchaser as aforesaid, or that such persons or corporations are such bona fide purchasers, then no such suit shall be instituted and the title of such claimant or claimants shall stand confirmed; but the Secretary of the Interior shall request that suit be brought in such case against the patentee, or the corporation, company, person, or association of persons for whose benefit the patent was issued or certification was made for the value of the land as hereinbefore specified."

The act of Congress did not create the debt due from the railroad company to the government; it did not "adjudge or decree that the corporation thereby became the debtor of the United States"; nor was the passage of the act "an attempt by retrospective statute to deprive citizens of property without due process of law." It was not a "usurpation of judicial power." The railroad company was not "condemned without a hearing to pay a debt." The ingenious argument of appellant in relation to these matters is not supported by a full consideration and proper interpretation of the various provisions of the acts of March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595], February 12, 1896, c. 18, 29 Stat. 6 [U. S. Comp. St. 1901, p. 1596], and March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603]. All laws necessarily bear with them all the powers or incidents necessary to fully carry out their intention. One of Domat's rules, referred to in Sedg. on Constr. of Stat. & Const. L. (2d Ed.) 243, is that:

"All laws, whether natural or arbitrary, are intended to produce results conformable to that general idea of justice in which they originate. Consequently, their application must be governed by the demands of this general spirit of justice; or, in regard to natural laws, by equity; and, in regard to positive or arbitrary laws, by the intention of the legislator. In this distinction and discrimination the science of law mainly consists."

The obligation of the railroad company, or debt created, arises from the facts set forth in the bill of complaint and proven at the trial. The railroad company had received patents for lands under an erroneous interpretation of the law. It was a clear mistake, and conveyed no rights or title whatever to the railroad company to any of the lands in question. The company sold a portion of the lands to bona fide purchasers, in many cases receiving more than the government price therefor. Not having any title to the lands, and having received the money for the lands it sold to bona fide purchasers, it must be held responsible to pay the amount specified in the act therefor. As was aptly stated by Judge Ross in the court below:

"The company, having sold and disposed of the government's property without right, was, regardless of the statute, liable to the government, if not for its true value, certainly for the amount of money received by the company therefor, and which it had no right to retain; for, having received the land illegally, and disposed of it for money, there was an implied con-

tract on the part of the company to pay over the money so received to its true owner."

Annexed to the bill of complaint are two exhibits: Exhibit A, showing lands that were erroneously patented by the United States to the Southern Pacific Company prior to March 2, 1896, containing in the aggregate 30,062.79 acres (the record shows that a portion of these lands were sold by executory contracts, which remain unexecuted); Exhibit B, showing so much of the lands embraced in Exhibit A as were erroneously patented by the United States to the Southern Pacific Company prior to March 2, 1896, and which, prior to said date, had been sold by said company to bona fide purchasers, containing in the aggregate 16,512.56 acres. Most of the lands described in these exhibits are identical. Exhibit A is virtually a copy of Exhibit B, with here and there an additional tract.

The contention of appellant that "the splitting of demands by voluntary dismissal of part thereof from suit No. 600 is a bar to this suit" cannot be sustained. With reference to this contention, the bill of complaint avers:

"That heretofore, on the 7th day of January, 1898, another suit was depending in this court, brought by your orator against said Southern Pacific Railroad Company, and numbered 600, to vacate and annul patents to certain lands, including those lands described in Exhibit B annexed to this bill. That said Southern Pacific Railroad Company filed answer therein, and alleged, in substance and effect, that the said tracts of land (Exhibit B) had been, prior to March 2, 1896, sold by said railroad company to purchasers in good faith and for value, and which purchasers were bona fide purchasers of said lands within the meaning of the acts of Congress in that behalf. * * * Your orator, relying upon the truth of such averments and of such testimony as to those lands described in said Exhibit B, dismissed from said case 600 the lands described in said Exhibit B, without prejudice."

The bona fide purchasers who had bought their lands from the railroad company were not made parties to that suit, and no adjudication could have been made therein as to the title of lands held by such bona fide purchasers. In the present suit the bona fide purchasers of the land are properly represented. An adjudication of their title and rights, and a recovery from the railroad company, is sought by the government for the price of the land which had been erroneously patented and sold. It will thus be seen, not only that the parties to these suits are different, but the subject-matter of the suit is also different. The relief sought and the issues raised are by no means identical; but a discussion of this point is wholly unnecessary, because the other suit (No. 600) as to certain lands was dismissed without prejudice, and such a dismissal cannot be pleaded in bar (Hughes v. United States, 4 Wall. 232, 237, 18 L. Ed. 303; Bunker Hill & Sullivan M. Co. v. Shoshone M. Co., 109 Fed. 504, 507, 47 C. C. A. 200, and authorities there cited), nor can it in any other manner affect the rights of the government in the present suit.

The decree of the Circuit Court is affirmed, with costs.